**SOO LINE RAILROAD COMPANY, d/b/a Canadian Pacific Railway, a Minnesota corporation, Plaintiff,**

v.

**The CITY OF MINNEAPOLIS; the Minneapolis Department of Planning; Paul W. Farmer, Director of the Minneapolis Department of Planning; the Minneapolis Department of Inspections; and Merwyn Larson, Director of the Minneapolis Department of Inspections, Defendants.**

No. Civ. 97–1971 (ADM/AJB).

United States District Court, D. Minnesota.

May 21, 1998.

Carolyn V. Wolski, Leonard, Street and Deinard, P.A., Minneapolis, MN, for plaintiff.

Paul H. Lamboley, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

MONTGOMERY, District Judge.

## I. INTRODUCTION

The above-entitled matter came on for hearing before the undersigned United States District Judge on February 18, 1998, pursuant to Canadian Pacific Railway's ("CPR" or "Plaintiff") Motion for Summary Judgment. CPR seeks to demolish five buildings on one of its rail yards in the Twin Cities, but the City of Minneapolis ("the City" or "Defendant"), through its Departments of Planning and Inspections, has refused to issue the requisite demolition permits. CPR alleges that the City's attempt to block demolition of the buildings violates the Interstate Commerce Commission Termination Act of 1995 ("ICCTA" or "the Act"), 49 U.S.C. §§ 10101 *et seq.* [Count I], and the "dormant" Commerce Clause of the United States Constitution [Counts II and III]. CPR seeks declaratory and injunctive relief, as well as damages and attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988. For the reasons set forth below, CPR's Motion for Summary Judgment will be granted as to Count I, and denied as moot as to Counts II and III. .

## II. BACKGROUND

Viewed in a light most favorable to the City, the facts are as follows. CPR is a wholly owned subsidiary of Canadian Pacific Railway Company, one of the largest railway systems in North America. CPR operates three major rail yards in the Twin Cities. The largest of the three, Shoreham Yard, is located in northeast Minneapolis and has been continuously operated by CPR since the late 1800s. Shoreham Yard currently serves as CPR's major intermodal yard and distribution hub in the upper midwest. "Intermodal" is a term used to describe the movement of a commodity by multiple modes of transportation. Intermodal transportation can be accomplished either by the transfer of trailers and shipping containers between rail cars, trucks and ships, or by the transfer of the commodities themselves between rail cars, trucks, and ships. The latter type of intermodal transportation typically requires a "bulk transfer facility."

In 1996, CPR began planning a redevelopment of its property at Shoreham Yard

to consolidate and expand its intermodal operations. The redevelopment plan calls for, among other things, the demolition of five buildings and the construction of a bulk transfer facility. In August 1997, CPR's contractor applied to the Minneapolis Department of Inspections for five demolition permits as required under Section 117.10 of the City's Code of Ordinances ("Code"). Pursuant to the Code, issuance of such permits is contingent upon the approval of a number of City departments, including the Department of Planning. Although CPR's applications were approved by four of the five required departments (Sewer, Water, Health, and Vacant Buildings), the Department of Inspections refused to issue the demolition permits because the Minneapolis Heritage Preservation Commission ("MHPC"), a division of the Department of Planning, withheld its approval. The MHPC refused to approve the applications on the grounds that the buildings may have historic value requiring study by the MHPC. One or more of the buildings to be demolished is on the MHPC's list of Potential National/Local Historic or Architectural Sites ("800 List").

## III. DISCUSSION

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of stating grounds for its motion and demonstrating the lack of issues of genuine material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Having done so, the opposing party may not rest on the allegations or denials of its pleadings, but must come forward with sufficient evidence to demonstrate a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

When evaluating the parties' submissions on a motion for summary judgment, the evidence of the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*, 477 U.S. at 255, 106 S.Ct. at 2513. A dispute concerning a material fact is "genuine" and sufficient to overcome a summary judgment motion "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248, 106 S.Ct. at 2510

### B. Count I—Federal Preemption

 CPR alleges that the ICCTA preempts the City's authority to withhold the demolition permits necessary for the redevelopment of Shoreham Yard. Preemption doctrine is founded in the Supremacy Clause of the United States Constitution[1] and invalidates any state law that contradicts or interferes with an Act of Congress. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (state laws that conflict with federal law are "without effect"); *Hayfield Northern R.R. Co., Inc. v. Chicago and North Western Trans. Co.*, 467 U.S. 622, 627, 104 S.Ct. 2610, 2614, 81 L.Ed.2d 527 (1984) (same); *Nordgren v. Burlington Northern R.R. Co.*, 101 F.3d 1246, 1248 (8th Cir.1996) (same). The "ultimate touchstone" in determining whether a state or local law conflicts with federal law is congressional intent. *Nordgren*, 101 F.3d at 1248.

 The three categories of preemption are well-settled: 1) express preemption, where Congress explicitly states its intent

---

1. The Supremacy Clause provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land." U.S. Const. Art. VI, cl. 2.

in the federal law at issue; 2) field or implied preemption, where Congress' scheme of regulation so pervasively dominates a field that an intent to occupy the entire field can be inferred; and (3) conflict preemption, where state and federal law directly conflict making it impossible for a private party to comply with the requirements of both. *Id.* at 1248; *see also English v. General Elec. Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990). Discerning Congress' intent requires an examination of the explicit statutory language as well as the structure and purpose of the statute. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996); *Nordgren*, 101 F.3d at 1248.

CPR alleges that the ICCTA expressly preempts the City's authority to withhold the demolition permits. The ICCTA contains an express preemption clause granting the newly-established Surface Transportation Board ("STB") exclusive jurisdiction over all railroad transportation. 49 U.S.C. § 10501. Subsection 10501(b) states:

(b) The jurisdiction of the Board over—

(1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

(2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located entirely in one state, is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b)(2). As one court has observed, "[i]t is difficult to imagine a broader statement of Congress' intent to preempt state regulatory authority over railroad operations." *CSX Transp., Inc. v. Georgia Pub. Serv. Comm'n*, 944 F.Supp. 1573, 1581 (N.D.Ga.1996) (holding that the language of the ICCTA and the Act's underlying policy, purpose, and legislative history express Congress' clear intent to preempt state regulatory authority over railroad agency closings).

The broad nature of Congress' preemption under the ICCTA is further evidenced by its expansive definitions for the terms "railroad" and "transportation." The Act defines "railroad" as including in pertinent part:

(A) a bridge, car float, lighter, ferry, and intermodal equipment used by or in connection with a railroad; ...

(C) a switch, spur, track, terminal, terminal facility, and a freight depot, yard, and ground, used or necessary for transportation.

49 U.S.C. § 10102(6)(A), (C). The definition of "transportation" includes:

(A) a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail ... and

(B) services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange of passengers and property.

49 U.S.C. § 10102(9)(A), (B). Thus, when section 10501(b) grants the STB exclusive jurisdiction over "transportation by rail carriers," it logically includes the yard, property, facilities and any intermodal equipment used in connection with a railroad, or related to the movement of passengers or property.

Despite this wide grant of exclusive jurisdiction to the STB, the City argues that its implementation of Minnesota and City law concerning the public health, safety, environment, and historic preservation, consistent with various Federal statutes, is

not preempted by the ICCTA.[2] The STB, however, has adopted regulations pursuant to the ICCTA that specifically address such concerns.[3] For example, the regulations require the preparation of Environmental Impact Statements and call for the STB to conduct the consultation process required by the National Historic Preservation Act. 49 C.F.R. § 1105.8(a).[4] The regulatory framework of the ICCTA so pervasively dominates the field in which the City is attempting to act that, in addition to express preemption, congressional intent to occupy the field can also be inferred. *See* 49 C.F.R. §§ 1105.1–1105.12.

Finally, the Court's conclusion that the ICCTA preempts the City's authority to regulate railroad construction is supported by the STB's interpretation of the Act. "As the agency with authority delegated from Congress to implement the provisions of the [ICCTA], the STB is 'uniquely qualified to determine whether state law ... should be preempted.'" *CSX Tranp., Inc.,* 944 F.Supp. at 1584 (quoting *Medtronic,* 518 U.S. 470, 116 S.Ct. at 2255, 135 L.Ed.2d 700). In *Cities of Auburn and Kent, WA—Petition for Declaratory Order,* STB Finance Docket No. 33200, 1997 WL 362017 (I.C.C.) (July 1, 1997), two cities sought an order from the STB allowing the imposition of state and local environmental, building, and land-use permitting requirements on a railroad company's project that involved "modernization, repairs, and improvements" to a 151–mile segment of rail line. The cities argued that nothing in the ICCTA directly preempted state or local law with respect to the specific project at issue, and that any incidental effect of local law on interstate commerce was within their legitimate police power and was justified by the benefits to the local populace and the environment. *Id.* at *3.

The STB rejected the cities' argument, ruling that the Act preempted the state and local permitting requirements. *Id.* at *4. In reaching its conclusion, the STB made several points relevant to the instant case:

> [A] state or local permitting process for prior approval of this project, or of any aspect of it related to interstate transportation by rail, ... is preempted.... The Board now has exclusive authority over the construction and operation of rail lines that are part of the interstate rail network ...
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> Local law ... is preempted when the challenged state statute "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ... As a result, we believe that state or local laws that would impose a local permitting or environmental process on BN's operations on, or maintenance or upgrading of, the Stampede Pass line are preempted to the National Environmental Policy Act ... the Energy Policy and Conservation Act ... and related laws, including the National Historic Preservation Act ... the Coastal Zone Management Act ... and the Endangered Species Act ...").

---

**2.** It should be noted that in response to Plaintiff's motion, the City has not come forward with any evidence that demolition of the buildings would negatively impact the public health, safety, or the environment. Neither the deposition of John P. Nail nor the affidavit of Joseph A. Klejwa explain how the demolition will negatively impact the environment. Furthermore, although one or more of the buildings to be demolished is on the City's 800 List of potential historically significant buildings, none of the buildings have actually been designated for historic preservation.

**3.** *See* 49 C.F.R. § 1105.1 ("These rules are designed to assure adequate consideration of environmental and energy factors in the Board's decisionmaking process pursuant to

**4.** Determining whether CPR must obtain the STB's approval before demolishing the buildings, pursuant to 49 C.F.R. § 1105.8, is not within the scope of this decision. Although the Court concludes that the City may not use its permit process to regulate CPR's construction activities, the MHPC may eventually have the opportunity to evaluate the demolition and construction project as part of the STB consultation process.

the maximum extent permitted by the Constitution.... [A] state or local permitting process implies the power to deny authorization, which could frustrate the activity that is subject to federal control. If BN were unable to undertake the projects, or if its ability to commence projects to maintain and upgrade its facilities were substantially delayed pending resolution of a state or local permitting or environmental process, its ability to carry rail traffic over the Stampede Pass line could be greatly inhibited, if not foreclosed. Given these circumstances, it appears that state or local permitting or environmental requirements would both interfere with the federal licensing program and unreasonably burden interstate commerce. *Id.* at *4–6 (citations omitted). The STB's analysis applies with equal force in this case. The City's attempt to block CPR's redevelopment of Shoreham Yard through its permitting process stands as an obstacle to the accomplishment of congressional purposes and objectives.

■ The Court concludes that the City's demolition permitting process upon which Defendants have relied to prevent CPR from demolishing five buildings at Shoreham Yard that are related to the movement of property by rail is expressly preempted by the ICCTA. The language of the Act expresses Congress' clear intent to preempt state and local regulatory authority over the construction, development, and operation of railroad facilities in general, and intermodal facilities in particular. CPR's demolition of the five buildings and subsequent construction, development, and operation of the proposed bulk transfer facility is subject only to such regulations and requirements as may be imposed by the STB pursuant to the ICCTA. *See, Norfolk Southern Railway Co. v. City of Austell, Georgia,* Civ. No. 1:97–CV–1018–RLV, slip op. at 18 (N.D.Ga. Aug. 19, 1997) (holding that the ICCTA preempts a city from prohibiting the construction of an intermodal facility by a railroad company

through application of a zoning ordinance and land-use permitting requirements).

## C. Count II—Commerce Clause

Having concluded that the City's permitting process is preempted by the ICCTA, it is not necessary, and therefore the Court declines to address the merits of CPR's Commerce Clause argument. *See Lyng v. Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 445, 108 S.Ct. 1319, 1323, 99 L.Ed.2d 534 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.").

## D. Count III—Section 1983

■ Because the Court does not reach the merits of CPR's Commerce Clause claim, and a federal preemption claim premised upon a violation of the Supremacy Clause is not cognizable under 42 U.S.C. § 1983, CPR's request for damages and attorney's fees is denied. *See generally Gustafson v. City of Lake Angelus,* 76 F.3d 778 (6th Cir.1996) (federal preemption claim premised upon a violation of the Supremacy Clause is not cognizable under 42 U.S.C. § 1983 and, as such, a plaintiff is not entitled to attorney's fees and costs under 42 U.S.C. § 1988 for such a claim); *Maryland Pest Control Ass'n v. Montgomery County, Maryland,* 884 F.2d 160 (4th Cir.1989) (federal preemption of local ordinances under the Supremacy Clause not actionable under Section 1983 and there can be no award of attorney's fees under Section 1988); *Segundo v. City of Rancho Mirage,* 813 F.2d 1387 (9th Cir.1987) (Supremacy Clause held to not support an action under Section 1983 and therefore would not support a claim for attorney's fees under Section 1988).

## IV. CONCLUSION

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [Docket

No. 10] is **GRANTED** as to Count I, and **DENIED AS MOOT** as to Counts II and III.

Furthermore, **IT IS HEREBY DE-CLARED** that the City's ordinances, including its historic preservation ordinances, as applied to the demolition of CPR buildings and the subsequent construction of an intermodal bulk transfer facility at Shoreham Yard, are preempted by the Interstate Commerce Commission Termination Act of 1995 § 10101 *et seq.* The City shall take all steps necessary to approve the five demolition permit applications and take all steps necessary to issue the five demolition permits sought by CPR.

**LET JUDGMENT BE ENTERED AC-CORDINGLY.**