**SOO LINE RAILROAD COMPANY,**
**Relator,**

v.

**CITY OF MINNEAPOLIS, Respondent.**

No. CX–00–1449.

Court of Appeals of Minnesota.

May 8, 2001.

Carolyn V. Wolski, Diane P. Gerth, Leonard, Street and Deinard, Minneapolis, MN, (for relator).

Jay M. Heffern, Minneapolis City Attorney, Carol Lansing, Assistant City Attorney, Minneapolis, MN, (for respondent).

Considered and decided by HARTEN, Presiding Judge, CRIPPEN, Judge, and HANSON, Judge.

## OPINION

CRIPPEN, Judge

Although the heritage-preservation designation of a northeast Minneapolis roundhouse does not affect relator Soo Line Railroad Company's present use of the building, relator contends that federal railway-operations law preempts the designation. Because there is no conflict that requires a preemption determination, we affirm the city's designation.

## FACTS

Relator owns and operates a rail yard in northeast Minneapolis. In April 1998, relator applied for a permit to demolish a roundhouse in preparation for selling the property to commercial developers. The city's heritage preservation commission, which reviews all demolition permits, held public hearings in August and September of 1998 to determine whether the roundhouse should be designated for heritage preservation. Many citizens testified to the significance and value of the roundhouse, but relator furnished evidence that the original structure has been changed significantly over the years and that attempts to incorporate the structure in development plans have proven cost prohibitive. The heritage preservation commission voted to recommend designation to the planning commission.

Planning commission staff studied the roundhouse and issued a report recommending that the building not be designated because it found the structure economically unsound. Despite that recommendation, and after holding a public hearing on the issue, the planning commission recommended designation to the city council in October 1998. The Minneapolis City Council then held public hearings in November 1998, which were continued until June 2000. By the time the city council voted on designation, neighborhood groups and concerned citizens had identified two viable development proposals that made use of the roundhouse. But by then, relator had taken the property off the market and returned the roundhouse to railway use. Relator did not testify at the June hearings, and the Minneapolis City Council approved a resolution designating the roundhouse for local heritage preservation on June 23, 2000.

Relator's preemption claim comes before us on a writ of certiorari permitting its challenge of the designation.

## ISSUE

Does the Interstate Commerce Commission Termination Act preempt the Minneapolis City Council's authority to designate property for historic preservation?

## ANALYSIS

### 1. Preemption

■■■ "The preemptive effect of a statute involves a question of law, which this court reviews de novo."[1] *In re Speed Limit for Union Pac. R.R. Through Shakopee,* 610 N.W.2d 677, 682 (Minn.App.2000) (citation omitted). When a state law conflicts with or frustrates federal law, the state law must give way. U.S. Const. art. VI, cl. 2; *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 663, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993).

Relator does not refute the assertion that the heritage designation has no effect on its present use of the roundhouse. Thus, we conclude that there is no occasion here to examine in depth the content of relevant preemption law. And the 1998 federal decision involving these same parties has little bearing on the issue in this case. In the 1998 decision, the federal district court found that the city's actions in withholding a demolition permit from the railway were preempted by the Interstate Commerce Commission Termination Act because they interfered with the railway's actual plan, not a potential or future plan, related to the movement of property by rail. *Soo Line R.R. v. City of Minneapolis,* 38 F.Supp.2d 1096, 1101–02 (D.Minn.1998). For this appeal, the railroad wants to be free of the future need to assert preemption. Stated differently, it wants an advisory opinion on possible future disputes.

■■■ As respondent points out, "whether a particular land use restriction interferes with interstate commerce" or is preempted by federal law "is a fact-bound question." *Borough of Riverdale Petition for Declaratory Order,* STB Finance Docket No. 33466, 1999 WL 715272, at *6 (I.C.C. Sept. 9, 1999). The court "must proceed from the presumption that the historic police powers of the state are not to be superseded by a federal act unless preemption is found to be 'the clear and manifest purpose of Congress.'" *Burlington N. Santa Fe Corp. v. Anderson,* 959

---

1. The city's historical-preservation-designation proceedings are quasi-judicial in nature and reviewable by this court on a writ of certiorari. *Handicraft Block Ltd. P'ship v. City of Minneapolis,* 611 N.W.2d 16, 24 (Minn.2000).

F.Supp. 1288, 1292 (D.Mont.1997) (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992)) (citation omitted).

Not all state and local regulations that affect interstate commerce fail. Only those that "conflict with" federal regulation, "interfere with" federal authority, or "unreasonably burden" interstate commerce are preempted.

In short, where the state or local law can be applied without interfering with the federal law, the courts have done so.

*King County Petition for Declaratory Order*, STB Finance Docket No. 32974, 1996 WL 545598, at *4 (I.C.C. Sept. 25, 1996), *aff'd sub nom. City of Auburn v. United States*, 154 F.3d 1025 (9th Cir.1998), *cert. denied*, 527 U.S. 1022, 119 S.Ct. 2367, 144 L.Ed.2d 771 (1999).

■ At the time of designation, relator returned the roundhouse to operating use and stated it had no "plans to alter or demolish the roundhouse." An anticipatory determination of preemption conflicts especially with the nature of preemption decisions—a fact-specific examination of the alleged interference with operations created by public action premised on local law. More practically, there is no authority suggesting that the possible future burden of asserting preemption outweighs the risk of injustice in either a decision that (a) precludes all future applications of a local law to railroad property, or (b) unwisely attempts to imagine the actual circumstances of specific, future local government decisions and makes in advance a preemption decision for any or all of them.

Relator relies on the *King County* case as authority for the proposition that preemption can be declared for "potential" interference, but *King County* did not deal with a potential conflict. To the contrary, it involved specific railroad plans for repair and improvement and the then-present as-sertion of local government "permitting authority" that included the power to deny the railroad's authority to proceed with its repair and improvement proposals. Those circumstances called for an immediate determination of the conflict between railroad plans and local-law standards. *Id.* In contrast, relator's appeal does not involve a railroad plan—or even evidence of a likely or possible plan—for repair or improvement of the roundhouse. More importantly, the heritage designation does not currently involve the assertion of city authority to deny or limit improvements. The Surface Transportation Board in *King County* expressly noted the need to examine the particular circumstances of a preemption claim. *Id.* (noting the need for a "thorough analysis" of the ordinance and its requirements to determine preemption).

The *Riverdale* case, also cited by relator, is confined to building permits and land-use regulation. *Borough of Riverdale Petition for Declaratory Order*, 1999 WL 715272, at *1. Like the *King County* case, the Surface Transportation Board declined to determine the preemptive effect of the local land-use restrictions because the board lacked sufficient facts to determine the issue. *Id.*, at *6. ("[A]s we know few specifics about the buffer issue, we cannot say at this time whether such a requirement, if applied in such a way as not to discriminate against railroads, would significantly interfere with NYSW's railroad operations and interstate commerce."). The Surface Transportation Board also expressly reserved judgment on other specific zoning regulations the parties might bring before it for preemption determinations. *Id.* at *7 ("With regard to the kinds of inspections that are permissible on property owned or used by interstate railroads, the potential for interference depends on the nature of the action by the

state or local government and the effect on rail transportation and Board remedies * * *. [W]e cannot go beyond these general principles here without more information about particular inspection and similar requirements that may be at issue in this case.").

In sum, we decline to view speculative conflicts as present interference permitting us to determine the preemptive effect of the Interstate Commerce Commission Termination Act in this case. "[T]he court does not issue advisory opinions, nor decide cases merely to establish precedent." *In re Schmidt,* 443 N.W.2d 824, 826 (Minn. 1989) (citation omitted).

### 2. Other Issues

Relator contends that the heritage designation is void because the heritage preservation commission succeeded in getting the designation only by withholding approval of a demolition permit, a power it was not given by statute or ordinance. Although respondent's ordinances prohibit issuance of permits for moving or demolition of a building without commission approval, Minneapolis, Minn., Code of Ordinances §§ 115.50(d), 117.30(d) (2000), the commission's enabling ordinance gives it authority to review permits only for a building or structure already designated for heritage preservation. *Id.* § 34.60(a) (2000).

Relator's argument may raise questions regarding the city's dealings with relator's demolition-permit application, but that public action is not in question on this appeal. And relator does not question whether the ensuing designation process was conducted according to applicable ordinances, whether the city had statutory authority for such designation, or whether the commission proceeded with authority duly delegated by the city. Moreover, relator has not identified, and we have not discovered, a reason to suggest that the manner in which the matter first came to the commission's attention impaired the legality of the process.

■ Relator also argues that the record does not contain substantial evidence to support the city's conclusion that the roundhouse satisfies the heritage-preservation criteria. Our task on review of a quasi-judicial decision is to determine whether the city council "erred as a matter of law, issued a decision unsupported by substantial evidence, or acted arbitrarily or capriciously." *In re Quantification of Envtl. Costs,* 578 N.W.2d 794, 799 (Minn. App.1998) (quotation and citation omitted), *review denied* (Minn. Aug. 18, 1998). Substantial evidence supports the commission's designation in this case.

■ Numerous concerned citizens and neighborhood organizations testified to support designation at public hearings held in August, September, October, and November of 1998, and at the hearing in June 2000. The Minneapolis City Planning Department report states that the roundhouse is "a major remnant of the once vibrant railroad industry of Minneapolis" and further explains the importance of the roundhouse:

> The City's grain industry would not have prospered without the transportation piece. The roundhouse was once the epicenter of the railroad repair yards and much of the population of Northeast Minneapolis depended on the Shoreham Yards for employment for almost a century.

The report also states that the "roundhouse is the only example of this building type in Minneapolis." *Id.* Furthermore, the State Historic Preservation Officer found that the roundhouse "exemplifies the broad trends of economic and social history." On this record, there is substantial evidence to support the city's conclusion

that the roundhouse is significant under two of the primary designation considerations: (1) as a structure that "exemplifies the broad trends of economic and social history," and (2) as a structure that displays "distinguishing characteristics of an architectural type inherently valuable for study." Finally, the two viable development proposals permit a finding that the roundhouse is economically sound. Thus, the designation is not arbitrary or capricious.

### DECISION

Because the heritage-preservation designation of the roundhouse does not presently interfere with railway operations, we decline to determine the preemptive effect of the Interstate Commerce Commission Termination Act. Because the city followed the proper procedures for designating the roundhouse for heritage preservation and because the designation is supported by substantial evidence, we affirm.

**Affirmed.**