2001 OK CIV APP 55

STATE of Oklahoma ex rel. OKLAHOMA CORPORATION COMMISSION and ex rel. Drew Edmondson, Attorney General of the State of Oklahoma, Applicant/Appellee,

v.

The BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, Respondent/Appellant.

No. 92781.

Court of Civil Appeals of Oklahoma, Division No. 2.

July 5, 2000.

Certiorari Denied Oct. 10, 2000.

Hugh D. Rice, Rainey, Ross, Rice & Binns, Oklahoma City, OK, for Appellant.

Chanda R. Graham, Rachel Lawrence Mor, Oklahoma Corporation Commission, Oklahoma City, OK, for Appellee.

## OPINION

TAYLOR, J.

¶ 1 Respondent, Burlington Northern and Santa Fe Railway Company (Burlington), seeks review of an order of the Oklahoma Corporation Commission (Commission) requiring Burlington to repair or replace a fence on the railroad's right-of-way adjacent to private property. Based on our review of the record, the parties' briefs, and the applicable law, we affirm.

¶ 2 The underlying facts are in large part undisputed. In October 1998, the Commission's Transportation Division brought these proceedings against Burlington at the behest of private landowner James W. King. The Commission sought an order requiring Burlington to repair or construct fencing bordering the railroad's right-of-way adjacent to King's property. An administrative law judge granted the relief sought by the Commission. Burlington appealed to the Commission en banc, which affirmed the administrative law judge's decision and ordered Burlington to either repair or replace the fence in question.

¶ 3 Burlington appeals. It asserts (1) the Commission lacked subject matter jurisdiction over the action, which Burlington characterizes as a purely private matter; (2) even if the Commission had subject matter jurisdiction, its power has been pre-empted by the Interstate Commerce Commission Termination Act, 49 U.S.C.A. § 10501 (West 1997 & Supp.2000) (the ICCTA);[1] (3) the state

---

1. The ICCTA abolished the Interstate Commerce Commission, created the Surface Transportation Board, and granted the Board jurisdiction over certain interstate rail functions and proceedings. Under 49 U.S.C.A. § 10501(b):

The jurisdiction of the Board over—

law to which the Commission looks for authority violates the Equal Protection Clause of the U.S. Constitution because other "public highways" in the state are not subject to the same fencing requirement; and (4) the Commission's order was not supported by the evidence.

¶ 4 The facts and legal arguments presented here are virtually identical to those presented in the recent opinion of Division 1 of the Court of Civil Appeals, *Union Pacific Railroad Company v. State of Oklahoma*, 1999 OK CIV APP 99, 990 P.2d 328 (*cert. denied* Oct. 13, 1999). There, the appellate court rejected the railroad's arguments and affirmed the Commission's order. The court relied on 66 O.S.1991 § 141 and 17 O.S.1991 § 91 to find the Commission had subject matter jurisdiction. Title 66 O.S.1991 § 141 imposes a duty on railroads to fence their rights-of-way "with a good and lawful fence," while 17 O.S.1991 § 91 vests the Commission with authority to enforce installation or repair of fences along rights-of-way.

¶ 5 The appeals court in *Union Pacific* rejected the railroad's argument that the ICCTA pre-empted the Commission's authority, finding the Act imposed federal jurisdiction only over railroad "facilities" and the fence was not a "facility" within the meaning of the Act. 1999 OK CIV APP 99, ¶ 5, 990 P.2d at 330. The court agreed with the Commission that under 49 U.S.C.A. § 20106, which is part of the Federal Railroad Safety Act, 49 U.S.C.A. §§ 20101 et seq. (FRSA), the Commission could continue to enforce the state requirement that railroads construct and maintain fencing on their rights-of-way. Finally, the court rejected the railroad's equal protection argument, finding the state's fencing requirements are rationally related to the legitimate state interest of assuring that railroads maintain their property in a manner safe to the public. *Union Pacific*,

(1) transportation by rail carriers, and the remedies provided ... with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

(2) the construction, acquisition, operation, abandonment, or discontinuance of spur, indus-

1999 OK CIV APP 99, ¶¶ 5–9, 990 P.2d at 330.

■ ¶ 6 Burlington argues error in the *Union Pacific* decision as well as error by the Commission in the case at bar. It contends, first, that the court in *Union Pacific* gave insufficient consideration to Oklahoma Supreme Court decisions holding the Commission lacks subject matter jurisdiction over purely private disputes. We agree with the conclusion reached by Division 1, however, that the cited statutes grant the Commission authority to act as it did. We reject Burlington's argument that this is a purely private matter between two property owners, inasmuch as the requirement to fence clearly implicates issues of public safety and transportation.

¶ 7 Burlington's reliance on *Chicago, R.I. & P. Ry. Co. v. State*, 1932 OK 467, 12 P.2d 494, in support of its argument on this issue is misplaced. Though the supreme court in *Chicago* did hold the Commission lacked jurisdiction to require the railroad to build a railroad crossing on a landowner's private property, the case is distinguishable in two respects. First, the *Chicago* case did not involve a specific statute authorizing the Commission to act, as does 17 O.S.1991 § 91 in the instant action. Further, the Commission's action in *Chicago* did not implicate public safety or public transportation; rather, the dispute strictly concerned a private landowner's desire to have the railroad build a "private farm crossing" on his land. 12 P.2d at 495. We find the holding of *Chicago* inapplicable here. ·

■ ¶ 8 Burlington next contends the FRSA is irrelevant, arguing the ICCTA was intended to "occupy the field" of railroad "facilities" regulation. It asserts again that "facilities" include fencing on a railroad's right-of-way along private property.

trial, team, switching, or side tracks, or facilities ...

is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

¶ 9 Even if we presume that the FRSA is not at issue here and that right-of-way fencing is a railroad "facility," we do not agree the ICCTA pre-empts the Commission's authority to act in this case. We do not believe that Congress intended when it enacted the ICCTA to pre-empt a state agency's police power to require an operating railroad to maintain a fence along its right of way, in the absence of evidence that such a requirement has a significant economic impact on the railroad's operation.

¶ 10 "Unless it is the clear and manifest purpose of Congress, whether express or implied, to substitute its law for that of the states, a presumption against pre-emption is employed out of respect for federalism and to give effect to the historic role of the states *as the primary regulators of matters of health and safety.*" *Akin v. Missouri Pacific Ry. Co.*, 1998 OK 102, ¶ 11, 977 P.2d 1040, 1044–45 (emphasis added) (footnotes omitted). *See also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996) (pre-emption cases " 'start with the assumption that the historic police powers of the States were not to be superseded' "); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947) (same). The pivotal question, or "ultimate touchstone," in determining whether a state regulation has been pre-empted is not the nature of the state regulation, but the intent and purpose of Congress in enacting the federal statute. *Medtronic*, 518 U.S. at 485, 116 S.Ct. at 2250; *City of Auburn v. U.S. Government*, 154 F.3d 1025 (9th Cir.1998), *cert. denied*, 527 U.S. 1022, 119 S.Ct. 2367, 144 L.Ed.2d 771 (1999).

¶ 11 When dealing with federal pre-emption of state law by "occupation of the field"—which Burlington applies here—the pre-empted field is defined with reference to whether the state law has some "direct and substantial effect" on the regulated field. *Burlington Northern Santa Fe Corp. v. Anderson*, 959 F.Supp. 1288, 1296 (D.Mont. 1997). In *Anderson*, the court identified the "regulated field" covered by the ICCTA as "the field of economic regulation of railroad transportation." *Id.*

¶ 12 This interpretation is consistent with the Act's legislative history, which makes clear that Congress' primary intent was to pre-empt *economic* regulation of railroads. In enacting the federal law Congress did not intend to "substantively redesign rail regulation." S.Rep. No. 104–176, 1995 WL 701522, "Summary of Major Provisions," ¶ 2 (Nov. 21, 1995). Instead, the ICCTA was intended to "preserve the careful balance put in place by [previous rail legislation] that led to a dramatic [economic] revitalization of the rail industry while protecting significant shipper and national interests." *Id.* The ICCTA was to assure that railroads could continue to count on a "nationally uniform system of *economic* regulation," *id.* (emphasis added), and also was intended to "standardize all *economic regulation (and deregulation) of rail transportation* " under federal law. H.R. Rep. 104–311, 104th Cong. 1st Sess. 1, 95, 1995 U.S.Code Cong. & Admin.News 793, 807, 1995 WL 683028, "Section by Section Analysis and Discussion" (Nov. 6, 1995) (emphasis added). There is no pre-emption of state and local regulation of trains if the state regulation in question does not interfere with the railroad's interstate rail operations. *Jones v. Union Pac. Ry. Co.*, 79 Cal.App.4th 1053, 94 Cal.Rptr.2d 661, 666 (2000).

¶ 13 The evidence in the record before us shows only that the Commission entered an order requiring Burlington to construct or fix the fence after Mr. King and a Commission agent wrote to Burlington twice and were ignored. Less than three-tenths of a mile of fence is affected, and repair will allow Mr. King to use his property to graze cattle. The evidence does not suggest the Commission's fencing requirement impedes or conflicts in any significant way with "uniform economic regulation" of the rail industry, or that it has any impact whatever on Burlington's "interstate rail operations." As noted by the Supreme Court of New Jersey in the case of *Village of Ridgefield Park v. New York, Susquehanna & Western Ry. Corp.*, 163 N.J. 446, 750 A.2d 57, 66 (2000): "We envision that it will be the rare situation when fairly enforced fire, health, plumbing, safety, or construction regulations interfere with a railroad's operations." The New Jer-

sey court also quoted the following passage from a decision of the federal Surface Transportation Board concerning pre-emption and public safety matters:

[R]ecent precedent has made it clear that, to the extent that they set up legal processes that could frustrate or defeat railroad operations, state or local laws that would impose a local permitting or environmental process as a prerequisite to the railroad's maintenance, use, or upgrading of its facilities are preempted because they would, of necessity, impinge upon the federal regulation of interstate commerce. *That means that, while state and local government entities ... retain certain police powers and may apply non-discriminatory regulation to protect public health and safety,* their actions must not have the effect of foreclosing or restricting the railroad's ability to conduct its operations or otherwise unreasonably burdening interstate commerce.

*Id.* at 64 (emphasis added).

¶ 14 No evidence or argument in the case at bar would support a finding that the Commission's actions "have the effect of foreclosing or restricting [Burlington's] ability to conduct its operations or otherwise unreasonably burdening interstate commerce." The reason for the regulation in question is clearly safety oriented: leaving the fence in disrepair would present a hazard to both the landowner and the railroad. The railroad does not contend the Commission's fence maintenance requirements are significantly burdensome economically, or that the railroad's failure to fence is part of some overall plan to discontinue operations, abandon the line, or take any other action of major economic significance. No federal regulatory agency or board clearly has jurisdiction to deal with this situation, and none has asserted jurisdiction.

¶ 15 The cases Burlington cites to support its position deal with situations different from those presented in the instant case. Those cases deal with a state or municipality attempting to impose requirements that unquestionably might affect a railroad's continued or discontinued operation or the operation of one of its lines or agencies—in other

words, local regulations that, if enforced, could have a significant economic impact on the railroad. *See e.g., City of Auburn v. U.S. Government,* 154 F.3d 1025 (9th Cir.1998), *cert. denied* 527 U.S. 1022, 119 S.Ct. 2367, 144 L.Ed.2d 771 (1999) (application of state environmental regulations could interfere with or prevent the reopening of an entire railroad line); *Burlington Northern Santa Fe Corp. v. Anderson,* 959 F.Supp. 1288 (D.Mont.1997) (applying state or local regulations could have prevented railroad's closure of railroad depots located on railroad property and staffed by railroad employees); *CSX Transp. Inc. v. Georgia Pub. Serv. Comm'n,* 944 F.Supp. 1573 (N.D.Ga.1996) (railroad seeking to modify or discontinue services of local railroad business office).

¶ 16 Thus, we reach the same conclusion as Division 1 reached in *Union Pacific,* though on different grounds. We, too, hold the ICCTA has not pre-empted the Corporation Commission's authority to require Burlington to repair or replace its right-of-way fences adjoining Mr. King's property.

¶ 17 We reject Burlington's argument that the state's requirements concerning right-of-way fencing by railroads constitute a denial of equal protection. As was the case in *Union Pacific,* the railroad has not identified any suspect classification which would trigger a heightened level of scrutiny of the state statute and regulation in question. The regulatory provisions are rationally related to the state's right to assure that railroads "maintain their property in such form to be safe to the public," 1999 OK CIV APP 99, ¶ 8, 990 P.2d at 330, and do not violate the Equal Protection Clause of the U.S. Constitution.

¶ 18 Finally, we reject Burlington's argument that the order is contrary to the evidence. "Ultimately, on review of Corporation Commission matters, this Court will not reverse if it finds that the Corporation Commission has regularly pursued its authority, and the Commission's findings are sustained by law and substantial evidence." *Hunton Oil & Gas Corp. v. Atchison, T. & S.F. Ry. Co.,* 1987 OK CIV APP 12, ¶ 7, 738 P.2d 191, 193 (citing *Application of South-*

*western Bell Tel. Co.,* 1978 OK 19, 575 P.2d 624). The Commission's evidence showed the fence had fallen into disrepair and was insufficient to hold cattle. The evidence also showed Burlington had ignored the demands of the landowner and the Commission, and had refused to repair or replace the fence in abrogation of its duty. The Commission acted pursuant to its authority under Title 17 on application of the landowner.

¶19 We find the Commission regularly pursued its authority and its order is supported by the law and substantial evidence. Accordingly, we affirm its decision.

¶20 AFFIRMED.

¶21 RAPP, P.J., and COLBERT, J., concur.