2005 ND 74

**HOME OF ECONOMY, a North Dakota Corporation, Plaintiff and Appellant,**

v.

**BURLINGTON NORTHERN SANTA FE RAILROAD, a National Railroad Corporation, Defendant and Appellee.**

No. 20040267.

Supreme Court of North Dakota.

April 6, 2005.

Garry A. Pearson, Pearson Christensen, Grand Forks, ND, for plaintiff and appellant.

Daniel J. Crothers, Nilles, Ilvedson, Stroup, Plambeck & Selbo, Ltd., Fargo, ND, for defendant and appellee.

MARING, Justice.

[¶ 1] Home of Economy appealed from a judgment dismissing for lack of subject

matter jurisdiction its action for damages and for an injunction to require Burlington Northern Santa Fe Railroad ("BNSF") to reopen a grade crossing in Grand Forks. We conclude the Interstate Commerce Commission Termination Act of 1995 ("ICCTA") does not preempt state jurisdiction over grade crossings. We reverse and remand.

I

[¶ 2] In 2003, BNSF closed a grade crossing on a spur line connecting BNSF's main line with the State Mill and Elevator in Grand Forks. The grade crossing provided access from State Mill Road across BNSF's spur line to property now owned by Home of Economy, and there was evidence BNSF ran forty to seventy cars per day on the spur line to the State Mill and Elevator. According to Cliff Olson, the previous owner of Home of Economy's property, the grade crossing had existed on BNSF's spur line since 1925. According to Olson, until the early 1950s, the grade crossing provided the only access from State Mill Road to his property, but in the early 1950s, Highway 81 was routed to also provide access to his property, and each access road had been used equally by his customers. According to Olson, there were no signs at the crossing when he owned the property, and BNSF placed a stop sign at the grade crossing after Home of Economy acquired the property from him in 1994. According to Wade Pearson, a vice president of Home of Economy, BNSF informed him in 1994 that it intended to close the grade crossing, but Pearson objected and BNSF placed a stop sign at the crossing.

[¶ 3] In June 2003, without notice to Home of Economy or any other entity, BNSF removed the wooden planks between the tracks, excavated the soil, and bulldozed a barrier on both sides of the spur line, making it impossible for vehicular traffic to cross the spur line from State Mill Road to Home of Economy's property. Home of Economy sued BNSF in a North Dakota state court for damages and to reopen the crossing, claiming an easement for access to its land had existed from the State Mill Road across the spur line since the 1920s. Home of Economy alleged an easement by prescription, easement by necessity, and easement by estoppel. The trial court dismissed Home of Economy's action, concluding the state court lacked subject matter jurisdiction, because the ICCTA vested jurisdiction over the regulation of railroad operations in the federal Surface Transportation Board. The court concluded the closing of the grade crossing constituted regulation of rail transportation under the ICCTA, because the grade crossing affected rail cars going from BNSF's rail yard to the State Mill and Elevator and could also affect liability for accidents at the crossing. The court concluded the ICCTA granted the Surface Transportation Board exclusive jurisdiction over the grade crossing and preempted state jurisdiction over Home of Economy's action.

II

[¶ 4] Home of Economy argues the ICCTA does not preempt all state court jurisdiction over railroads, but grants exclusive federal jurisdiction to the Surface Transportation Board only in those cases involving substantial economic impact on a railroad's operations. Home of Economy argues the ICCTA does not preclude states from enforcing the public's right of passage across the spur line and claims that, by using the grade crossing for at least 78 years, the public has acquired an easement across the spur line. BNSF responds the ICCTA relegates the dispute over the crossing to the exclusive jurisdiction of the Surface Transportation Board,

and a North Dakota state court does not have jurisdiction to grant Home of Economy's requested relief. BNSF alternatively argues it was entitled to summary judgment because Home of Economy's claim for an easement is precluded under North Dakota law.

■ [¶ 5] The issue in this case is whether the ICCTA preempts state law regarding grade crossings. The Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, provides that "the laws of the United States ... shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." Under the Supremacy Clause, state law that conflicts with federal law is " 'without effect.' " *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981)). *See Billey v. North Dakota Stockmen's Ass'n*, 1998 ND 120, ¶¶ 28–29, 579 N.W.2d 171; *NoDak Bancorporation v. Clarkson*, 471 N.W.2d 140, 142 (N.D.1991); *State v. Liberty Nat'l Bank and Trust Co.*, 427 N.W.2d 307, 309–10 (N.D.1988); *Federal Land Bank v. Lillehaugen*, 404 N.W.2d 452, 455 (N.D.1987). In *English v. General Elec. Co.*, 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990) (citations omitted), the United States Supreme Court described when federal law preempts state law under the Supremacy Clause:

First, Congress can define explicitly the extent to which its enactments pre-empt state law. Pre-emption fundamentally is a question of congressional intent, and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one.

Second, in the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a "scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or where an Act of Congress "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." Although this Court has not hesitated to draw an inference of field pre-emption where it is supported by the federal statutory and regulatory schemes, it has emphasized: "Where ... the field which Congress is said to have pre-empted" includes areas that have "been traditionally occupied by the States," congressional intent to supersede state laws must be " 'clear and manifest.' "

Finally, state law is pre-empted to the extent that it actually conflicts with federal law. Thus, the Court has found pre-emption where it is impossible for a private party to comply with both state and federal requirements, or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

■ [¶ 6] The United States Supreme Court's framework for analyzing preemption claims starts with the assumption that Congress does not intend to displace state law. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996); *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); *Cipollone*, 505 U.S. at 516, 112 S.Ct. 2608. *See Billey*, 1998 ND 120, ¶ 28, 579 N.W.2d 171; *Lillehaugen*, 404 N.W.2d at 455. The assumption that Congress did not intend

to displace state law is not triggered when a state regulates in an area where there has been a history of significant federal presence. *United States v. Locke*, 529 U.S. 89, 108, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000) (state regulation of maritime commerce). However, where a state acts in a field that states have traditionally occupied, the assumption that the historic police powers of a state are not superseded by federal law applies, unless Congress clearly and manifestly indicates a contrary intent. *Medtronic*, at 485, 116 S.Ct. 2240. In *Cipollone*, at 517, 112 S.Ct. 2608 the United States Supreme Court explained that when Congress has considered the issue of preemption and has included in the enacted legislation a provision explicitly addressing preemption, matters beyond the reach of the statute are not preempted. *See Medtronic*, at 484, 116 S.Ct. 2240. Thus, when Congress has explicitly addressed the preemption issue, courts must identify the domain expressly preempted by the statute, and whether federal law preempts state law is largely a matter of statutory construction. *Cipollone*, at 517, 112 S.Ct. 2608; *Medtronic*, at 484–86, 116 S.Ct. 2240.

[¶ 7] The relevant part of the ICCTA, 49 U.S.C. § 10501(b), includes specific preemptive language, which provides:

(b) The jurisdiction of the [Surface Transportation] Board over—

(1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

(2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,

is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

[¶ 8] The remedies in the ICCTA explicitly preempt state remedies "with respect to regulation of rail transportation." The ICCTA defines "transportation" to include "a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use" and "services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange of passengers and property." 49 U.S.C. § 10102(9). The ICCTA defines "railroad" to include "a bridge, car float, lighter, ferry, and intermodal equipment used by or in connection with a railroad, ... the road used by a rail carrier and owned by it or operated under an agreement, and ... a switch, spur, track, terminal, terminal facility, and a freight depot, yard, and ground, used or necessary for transportation." 49 U.S.C. § 10102(6).

[¶ 9] The structure of the ICCTA includes provisions dealing with standards for establishing rates, classifications, through routes, rules, and practices, *see* 49 U.S.C. §§ 10701–10747; licensing, *see* 49 U.S.C. §§ 10901–10907; operations regarding transportation, service, and rates, *see* 49 U.S.C. §§ 11101–11164; finance, *see* 49 U.S.C. §§ 11301–11328; federal-state relations regarding taxes, *see* 49 U.S.C. §§ 11501–11502; enforcement in the form of investigations, rights, and remedies, *see* 49 U.S.C. §§ 11701–11707; and civil and

criminal penalties, *see* U.S.C. §§ 11901–11908. However, none of those provisions explicitly deal with grade crossings. Moreover, the legislative history for the ICCTA reflects Congress intended to effectuate "the direct and complete pre-emption of State economic regulation of railroads." H.R.Rep. No. 104–311, 104 Cong., First Sess., at 95–96 (1995), reprinted in 1995 U.S.C.C.A.N. 793, 807–08. The legislative history for the ICCTA explicitly effectuates the federal policy of occupying the entire field of economic regulation of the interstate rail transportation system and recognizes that states retain police powers reserved by the constitution. *Id.* at 807–08.

■ [¶ 10] The ICCTA does not explicitly grant the Surface Transportation Board exclusive jurisdiction over grade crossings, and the parties have not cited any cases about whether the ICCTA has preempted state law regarding grade crossings. In different factual situations, some courts have broadly construed Congress's preemption language in the ICCTA and have concluded that language preempted state or local laws. *Friberg v. Kansas City S. Ry.*, 267 F.3d 439, 443–44 (5th Cir.2001) (holding plain language of ICCTA preempted Texas Anti–Blocking Statute that prohibited railroad from allowing standing train to block crossing for more than five minutes); *City of Auburn v. United States*, 154 F.3d 1025, 1029–31 (9th Cir.1998) (holding plain language of ICCTA preempted state and local environmental land use laws); *Rushing v. Kansas City S. Ry.*, 194 F.Supp.2d 493, 499–501 (S.D.Miss.2001) (holding ICCTA preempted state nuisance and negligence action to enjoin railroad from operation of switch yard); *Wisconsin Cent. Ltd. v. City of Marshfield*, 160 F.Supp.2d 1009, 1012–15 (W.D.Wis.2000) (holding broad language of ICCTA preempted city's use of eminent domain law to condemn railroad's passing track); *Soo Line R.R. v. City of Minneapolis*, 38 F.Supp.2d 1096, 1099–1101 (D.Minn.1998) (holding ICCTA preempted local law requiring demolition permits for railroad's buildings in rail yard); *Burlington N. Santa Fe Corp. v. Anderson*, 959 F.Supp. 1288, 1294–96 (D.Mont.1997) (holding ICCTA preempted state law authorizing state public service commission to exercise regulatory authority over railroad agency closing); *CSX Transp., Inc. v. Georgia Pub. Serv. Comm'n*, 944 F.Supp. 1573, 1580–85 (N.D.Ga.1996) (holding ICCTA preempted state regulatory authority over railroad agency closings); *Application of Burlington N. R.R.*, 249 Neb. 821, 545 N.W.2d 749, 751 (1996) (holding ICCTA preempted state court's jurisdiction to consider practices, routes, services, and facilities of interstate rail carriers); *City of Seattle v. Burlington N. R.R.*, 145 Wash.2d 661, 41 P.3d 1169, 1172–74 (2002) (holding ICCTA and Federal Rail Safety Act of 1970 preempted city's railroad switching and blocking ordinances). *See* Maureen E. Eldredge, Comment: *Who's Driving the Train? Railroad Regulation and Local Control*, 75 U. Colo. L.Rev. 549, 562–79 (2004).

[¶ 11] Some courts, however, have narrowly construed Congress's preemption language in the ICCTA and have concluded that language has not preempted state or local laws. *Iowa, Chicago & E. R.R. v. Washington County*, 384 F.3d 557, 561–62 (8th Cir.2004) (holding railroad failed to establish ICCTA preempted state administrative proceedings for railroad to replace four railroad-highway bridges); *Florida E. Coast Ry. v. City of West Palm Beach*, 266 F.3d 1324, 1329–39 (11th Cir.2001) (holding ICCTA did not preempt application of city zoning and licensing ordinances to a railroad's lessee's aggregate distribution operation located on railroad property because that activity did not constitute regulation

of rail transportation); *Rushing*, 194 F.Supp.2d at 501 (holding ICCTA did not preempt state action to require railroad to remedy pooling of water on plaintiffs' property); *State v. Burlington N. Ry. Co.*, 2001 OK CIV APP 55, ¶ 16, 24 P.3d 368 (holding ICCTA did not preempt state's authority to require railroad to repair or replace right-of-way fences); *Wheeling & Lake Erie Ry. Co. v. Pennsylvania Pub. Util. Comm'n*, 778 A.2d 785, 790–92 (Pa. Cmwlth.2001) (holding ICCTA did not preempt state authority to regulate rail-highway crossing bridge and allocate costs of maintenance and reconstruction); *In re Vermont Ry.*, 171 Vt. 496, 769 A.2d 648, 652–55 (2000) (holding ICCTA did not preempt city's zoning ordinance for permit for salt shed on railroad property). *See* Eldredge, 75 U. Colo. L.Rev. at 579–84.

[¶ 12] In *Florida E. Coast Ry.*, 266 F.3d at 1331, the Eleventh Circuit Court of Appeals stated the ICCTA did not preclude the application of all other law, but preempted state law "only ... 'with respect to regulation of rail transportation,'" which the court concluded necessarily meant "something qualitatively different from laws 'with respect to rail transportation.'" The court said Congress narrowly tailored the preemption provision to "displace only 'regulation,' i.e., those state laws that may reasonably be said to have the effect of 'manag[ing]' or 'govern[ing]' rail transportation ... while permitting the continued application of laws having a more remote or incidental effect on rail transportation." *Id.* The court concluded zoning ordinances of general applicability, which were enforced against a private entity leasing property from a railroad for non-rail transportation purposes, were not sufficiently linked to rules governing the operation of the railroad so as to constitute laws "with respect to regulation of rail transportation." *Id.* The court also examined the history and purpose of the ICCTA

and said the ICCTA removed direct economic regulation by states, as opposed to the incidental effects that were in the exercise of traditionally local police powers. *Id.* at 1337.

[¶ 13] In *Wheeling*, 778 A.2d at 791–92, the Pennsylvania court recognized that states have the traditional police power to regulate the public safety of grade crossings and to allocate the costs of constructing, maintaining, and improving grade crossings. *See Atchison, Topeka & Sante Fe Ry. v. Public Utils. Comm'n*, 346 U.S. 346, 352, 74 S.Ct. 92, 98 L.Ed. 51 (1953); *Lehigh Valley R.R. v. Board of Pub. Util. Comm'rs*, 278 U.S. 24, 34–35, 49 S.Ct. 69, 73 L.Ed. 161 (1928). *See generally* 65 Am.Jur.2d *Railroads* §§ 181, 186 (2001). The court recognized the ICCTA did not expressly preempt states' traditional police power over public safety of rail-highway crossings. *Wheeling*, 778 A.2d at 792. The court concluded Congress clearly intended to preempt only the states' previous authority to economically regulate rail transportation within states' borders with respect to such matters as the operation, rates, rules, routes, services, drops, facilities, and equipment, and to reserve the states' police power to regulate the safety of rail-highway crossings. *Id.* The court concluded there was no conflict between the exclusive jurisdiction of the Surface Transportation Board to economically regulate rail carriers under the ICCTA and the states' authority to regulate the public safety of rail-highway crossings, which are part of the public highways. *Id.*

[¶ 14] In *Iowa, Chicago & E. R.R.*, 384 F.3d at 561–62, the Eighth Circuit Court of Appeals concluded the railroad had failed to establish the ICCTA preempted state law requiring a railroad to replace four bridges at its own expense. The court said its holding was narrow because state proceedings were incomplete and

states do not operate in this arena free of federal involvement, and if federal funding was used for one or more of the four bridge projects, federal law would apportion the cost. *Id.* at 562.

[¶ 15] Our law recognizes public roads by prescription. N.D.C.C. § 24–07–01. *See Hartlieb v. Sawyer Township Bd.*, 366 N.W.2d 486, 488 (N.D.1985); *Mohr v. Tescher*, 313 N.W.2d 737, 739 (N.D.1981); *Backhaus v. Renschler*, 304 N.W.2d 87, 89 (N.D.1981); *Berger v. Berger*, 88 N.W.2d 98, 100 (N.D.1958). Our statutes also recognize the traditional state police power over grade crossings. *See* N.D.C.C. chs. 24–09; 49–10.1; 49–11. Our statutes distinguish between public grade crossings and private crossings. *See* N.D.C.C. §§ 24–09–01.1 (public highway-railroad crossing); 24–09–02 (public grade crossings); 24–09–04 (public grade crossings); 24–09–05 (each grade crossing); 24–09–08 (any railroad grade crossing); 24–09–10 (changing or closing railroad crossing of a public highway and a railroad); 49–10.1–10 (private crossings over any line or railroad in the state); 49–11–06 (railroad crossings at public highway railroad crossing); 49–11–17 (railroad crossing over land owned on both sides by one person). Our statutes authorize the North Dakota Department of Transportation to conduct and systematically maintain a survey of all streets and highways as required by the Federal Highway Safety Act of 1973 to identify railroad crossings which may need additional warning systems beyond the standard crosswalks and advance warning signs. N.D.C.C. § 24–09–01.1.

[¶ 16] A body of federal statutory law and case law also deals with the interrelationship between state and federal authorities over grade crossings. *See Norfolk S. Ry. v. Shanklin*, 529 U.S. 344, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000) (holding, under 49 U.S.C. § 20101 et seq., the Federal Railroad Safety Act of 1970, once federal highway administration approved project and installed sign at grade crossing using federal funds, federal law preempted state tort law for wrongful death action against railroad). The Federal Rail Safety Act specifically addresses "the railroad grade crossing problem." *See* 49 U.S.C. § 20134(a). In *Iowa, Chicago & E. R.R. Corp.*, 384 F.3d at 561, the Eighth Circuit Court of Appeals discussed the interplay between the ICCTA and the Federal Rail Safety Act of 1970 and recognized Congress for many decades had forged a federal-state regulatory partnership to deal with problems of rail and highway safety and highway improvement, which the ICCTA did not address. The court said Congress's silence did not reflect a clear and manifest purpose for the ICCTA to preempt traditional state regulation of public roads and bridges that Congress had encouraged in other statutes. *Id.* The court concluded the railroad had failed to establish the ICCTA preempted state proceedings to replace bridges at four railroad crossings. *Id.*

[¶ 17] The foregoing authorities indicate the ICCTA has not preempted all state authority over issues regarding railroads and grade crossings. The preemption language in the ICCTA explicitly preempts many issues "with respect to regulation of rail transportation," but does not specifically refer to states' traditional police power regarding grade crossings. We conclude the ICCTA does not explicitly preempt state law regarding grade crossings, and we discern no actual conflict between the Surface Transportation Board's exclusive jurisdiction with respect to regulation of rail transportation under the ICCTA and states' traditional authority regarding grade crossings. We therefore conclude the trial court erred in de-

termining the ICCTA preempted state law regarding grade crossings.

## III

[¶ 18] Relying on *Nowling v. BNSF Ry.*, 2002 ND 104, 646 N.W.2d 719, BNSF alternatively argues it was entitled to summary judgment because Home of Economy's claim for an easement is precluded under North Dakota law. In *Nowling*, at ¶ 14, we held a right of way for an operating railroad was a public highway under N.D. Const. art. XII, § 13, which was not subject to adverse possession. Here, however, the trial court did not address that issue, and we therefore decline to address it.

## IV

[¶ 19] We reverse the judgment and remand for proceedings consistent with this opinion.

[¶ 20] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.

[¶ 21] The Honorable WILLIAM A. NEUMANN, a member of the Court when this case was heard, resigned effective March 14, 2005, and did not participate in this decision.