534 F.3d 443 (2008)
FRANKS INVESTMENT COMPANY, LLC, Plaintiff-Appellant,
v.
UNION PACIFIC RAILROAD CO., Defendant-Appellee.
No. 08-30236.
United States Court of Appeals, Fifth Circuit.
July 3, 2008.
Scott C. Sinclair (argued), Sinclair Law Firm, John M. Madison, Jr., Wiener, Weiss & Madison, Shreveport, LA, for Plaintiff-Appellant.
William H. Howard, III (argued), Alissa Jean Allison, Paul Lee Peyronnin (argued), Kathlyn G. Perez, Baker, Donelson, Bearman, *444 Caldwell & Berkowitz, New Orleans, LA, for Defendant-Appellee.
Before JONES, Chief Judge, and BARKSDALE and STEWART, Circuit Judges.
RHESA HAWKINS BARKSDALE, Circuit Judge:
Franks Investment Company, L.L.C., filed a Louisiana possessory action against Union Pacific Railroad Company, seeking to enjoin its removal of four railroad crossings on its right-of-way at Franks' property. After a bench trial, the district court concluded that Franks' claim was expressly preempted by the Interstate Commerce Commission Termination Act (ICCTA), 49 U.S.C. § 701 et. seq. For this expedited appeal, primarily at issue is whether, under the ICCTA, railroad crossings fit within the purview of "transportation by rail carriers", so that Franks' state-law possessory action is expressly preempted by the ICCTA. AFFIRMED.

I.
Franks owns approximately 1,000 acres in Caddo Parish, Louisiana. The property is bounded on the east by the Union Pacific right-of-way, on the north and south by public roads, and on the west by a bayou. Union Pacific owns and operates a main line track, providing freight rail service between Shreveport and Alexandria, Louisiana; that track runs for two miles between the Franks property and Louisiana Highway 1.
Prior to December 2007, four private railroad crossings existed along this two-mile stretch of tracks, providing access from the property to Highway 1. At least three additional points of ingress/egress exist to the north and south of the property, which do not use railroad crossings.
Union Pacific is solely responsible for the maintenance of its right-of-way, including the four crossings. In 2005, Union Pacific advised Franks that it intended to remove the four crossings. Franks objected, advising Union Pacific of its belief that it owned the right to use the crossings. In December 2007, Union Pacific destroyed and closed two of the four crossings.
Franks filed this action in January 2008 in state court, claiming it possessed a real right in the four crossings under Louisiana Code of Civil Procedure Article 3655. It sought, therefore, an injunction to compel the reinstallation of the two destroyed crossings and to prevent the other two from being closed.
Union Pacific removed the action to federal court on diversity grounds. Pursuant to Federal Rule of Civil Procedure 65(a)(2), the district court consolidated the hearing on the preliminary-injunction motion with a bench trial for the possessory action.
Following a two-day trial, the district court rendered oral reasons for judgment on 25 February 2008. The court held Franks' state-law action was expressly preempted by the ICCTA. Accordingly, it did not rule on Franks' state-law claim. Judgment dismissing Franks' action was entered on 29 February 2008.

II.
While the appeal was pending, Franks moved in this court for an injunction requiring Union Pacific to restore the two removed crossings; a motions panel denied that motion. It granted, however, Franks' motion to expedite this appeal. Franks contends: its possessory action is not preempted by the ICCTA; and the *445 district court erred in failing to enjoin Union Pacific from removing the four crossings. For present purposes, preemption vel non is the only issue that must be addressed.
We review de novo whether a state statute or common-law action is preempted by federal law. Friberg v. Kan. City S. Ry. Co., 267 F.3d 439, 442 (5th Cir.2001) (citing Meredith v. La. Fed'n of Teachers, 209 F.3d 398, 404 (5th Cir.2000)). Any factual findings made for purposes of determining ICCTA preemption, however, are reviewed only for clear error. Fla. E. Coast Ry. Co. v. City of W. Palm Beach, 266 F.3d 1324, 1328 (11th Cir.2001).

A.
It is axiomatic that, under the Supremacy Clause, state laws that "interfere with, or are contrary to the laws of congress, made in pursuance of the constitution" are invalid. Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 210, 6 L.Ed. 23 (1824) (Marshall, C.J.); U.S. CONST. art. VI, cl. 2. Pursuant to this principle, federal law may preempt state law in three well-established ways; preemption being "express", "field", or "conflict". Friberg, 267 F.3d at 442.
Express preemption occurs where Congress clearly and explicitly evinces its intent to preempt state law. Id. Field preemption occurs where "state law intrudes in an area that Congress has reserved for federal jurisdiction". Id. Conflict preemption occurs where the enforcement of state law cannot be achieved without running afoul of federal law. Id.
On becoming effective in 1996, and consistent with its name, the ICCTA "abolish[ed] the Interstate Commerce Commission and creat[ed] the Surface Transportation Board ... to perform many of the regulatory functions formerly performed by the Commission". Id. As noted, the district court concluded Franks' possessory action is expressly preempted by the ICCTA.
It goes without saying that our preemption analysis begins with the language of the ICCTA's preemption clause. CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) ("If the statute contains an express preemption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent."). Section 10501(b) of the ICCTA provides:
(b) The jurisdiction of the [Surface Transportation] Board over
(1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
(2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,

is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b) (emphasis added). The Surface Transportation Board (STB), therefore, is vested with exclusive jurisdiction over the regulation of "transportation by rail carriers".
Accordingly, at issue is whether railroad crossings fit within the purview of "transportation by rail carriers", thereby evincing Congress' intent to preempt *446 state-law claims relating to ownership of the crossings. The ICCTA defines "transportation" to include, inter alia: "a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use". 49 U.S.C. § 10102(9)(A) (emphasis added).
In 2001, in Friberg, 267 F.3d 439, our court analyzed the preemptive scope of the ICCTA in a strikingly similar context. There, a landscape nursery experienced a decline in business when the railroad's utilization of a side-track intermittently blocked access to the nursery. Id. at 441. The resulting action against the railroad asserted, inter alia, a claim for negligence per se, based on the railroad's contravention of the Texas Anti-Blocking Statute. Id. & n. 2; see TEX. TRANSP. CODE. ANN. § 741.007(a) (prohibiting railroad officers, agents, servants, or receivers from blocking streets, highways, or railroad crossings for more than five minutes). The railroad moved for summary judgment on the basis that the statute was preempted by the ICCTA. Friberg, 267 F.3d at 441.
Our court held: the Texas Anti-Blocking Statute was expressly preempted by the ICCTA. Id. at 443. After analyzing the language of the ICCTA's above-quoted preemption provision, our court ruled that the Texas Anti-Blocking Statute clearly affected railroad transportation: "Regulating the time a train can occupy a rail crossing impacts, in such areas as train speed, length and scheduling, the way a railroad operates its trains, with concomitant economic ramifications ...." Id. (emphasis added).
Union Pacific similarly maintains that Franks' state-law possessory action impinges upon the STB's exclusive jurisdiction with regard to railroad transportation. We agree. The district court concluded, based on trial testimony, that crossings, as in Friberg, affect "transportation"; as discussed above, it is defined, in part, by the ICCTA as "the movement of passengers or property ... by rail". 49 U.S.C. § 10102(9)(A). In that regard, the district court found crossings affect safety, drainage, and maintenance, which necessarily affect rail travel.
Franks makes much of "crossings" not being explicitly listed in the ICCTA definition of "transportation". This omission, Franks contends, shows Congress' intent to exclude crossings from the ICCTA's exclusive jurisdiction and preemption provisions. The earlier-provided definition of transportation, however, is broad, including "property ... or equipment of any kind related to the movement of passengers or property, or both, by rail". Id. (emphasis added). Obviously, such broad language belies the notion that Congress intended "transportation" to include only items listed in its definition.
In addition to being consistent with our circuit's precedent in Friberg, this conclusion is consistent with precedent from other jurisdictions regarding preemption under the ICCTA. For example, in City of Lincoln v. Surface Transportation Board, the City proposed to take, under its power of eminent domain, a 20-foot strip from four blocks of the railroad's right-of-way. 414 F.3d 858, 861 (8th Cir.2005). It petitioned the STB to rule there was no preemption under the ICCTA. Therefore, at issue before the STB was whether the proposed taking would interfere with railroad operations, thus rendering it preempted under the ICCTA. Id. at 860. The STB ruled that it would. Id. The STB's having held there was preemption, the City filed a petition for review of that order. Id. at 858. Emphasizing its extremely *447 narrow standard of review of the STB order under the Administrative Procedure Act, the Eighth Circuit noted the expansively defined definition of rail transportation and upheld the STB's conclusion that the railroad's stated safety concerns affected transportation, with the STB's decision being supported by substantial evidence. Id. at 862.
Similarly, in City of Auburn v. United States, the City sought to impose state and local environmental review and permitting requirements on the railroad's repair and improvement process. 154 F.3d 1025, 1027-28 (9th Cir.1998). As with City of Lincoln, this case involved a STB determination of preemption under the ICCTA. The City maintained, much as Franks does here, that, because land-use and environmental regulations were not explicitly mentioned in the ICCTA's preemption provision, and, because of the presumption against preemption in fields traditionally occupied by the State, such regulations were not preempted. Id. at 1029. In finding express preemption, id. at 1031 n. 7, the court rejected this contention, stating: "All the cases cited by the parties find a broad reading of Congress' preemption intent, not a narrow one". Id. at 1030. The court also rejected the City's contention that Congress only intended preemption of economic regulation of the railroads. Id.
Moreover, the cases relied upon by Franks, which decline to find ICCTA preemption, are easily distinguished. For example, in Emerson v. Kansas City Southern Railway Co., landowners filed a state-law action for, inter alia, trespass and public and private nuisance against a railroad, relating to its discarding railroad ties in a wastewater drainage ditch, which was adjacent to the track. 503 F.3d 1126, 1128 (10th Cir.2007). The action was removed to district court under diversity jurisdiction. Id. While noting the expansive definition of transportation, the Tenth Circuit correctly held that such a ditch was not "related to the movement of passengers or property" and, accordingly, held there was no express preemption. Id. at 1129-30. (It also held there was no conflict preemption. Id. at 1132-34.) Obviously, there is tremendous difference between a ditch next to railroad tracks and a railroad crossing. The former does not alter or obstruct the movements of trains on the track, while the existence and maintenance of the latter stands to directly affect rail transportation.
Similarly, Franks' reliance upon Florida East Coast Railway Co. v. City of West Palm Beach, 266 F.3d 1324 (11th Cir. 2001), is misplaced. There, the Eleventh Circuit found no ICCTA preemption where the City imposed zoning ordinances upon a non-railroad lessee of a railroad right-of-way for non rail-transportation purposes. Id. at 1329. In so holding, the court noted: "We are not called upon to decide whether federal law would constrain the City's exercise of its police power to limit [the railroad's] operations". Id. at 1332. Here, we are called upon to make such a decision; and, as recognized by the Eleventh Circuit, we may set aside factual findings regarding whether rail transportation is affected only if they are clearly erroneous. Id. at 1327.
With the foregoing precedent in mind, we turn to the paucity of precedent, in addition to our court's decision in Friberg, relating to ICCTA preemption vel non for railroad crossings. For the action at hand, the district court found Island Park, L.L.C. v. CSX Transportation, Inc., No. 1:06-CV-310, 2007 WL 1851784 (N.D.N.Y. 26 June 2007), to be highly persuasive. In that case, the district court in New York addressed whether the ICCTA preempted section 97 of the New York Railroad Law, *448 under which the New York Department of Transportation obtained an administrative order compelling the closure of a crossing. Id. at *1, *12. The court found section 97 to be expressly preempted, stating:
Any physical improvements made to railroad trackssuch as those made to construct a crossingwill necessarily impact and be involved in the movement of passengers and property passing over those tracks. Therefore, the rail crossing is within the Surface Transportation Board's jurisdiction and State Defendants' order pursuant to section 97 of the New York Railroad Law is expressly preempted by the ICCTA.
Id. at *12.
Franks, however, cites two non-binding cases in which the ICCTA was applied to railroad crossings, contending both are directly contrary to the district court's ruling in this action. The first case is readily distinguishable; the second, in our view, decided incorrectly.
First, in New Orleans & Gulf Coast Railway Co. v. Marinovich Barrois, the district court determined that the plaintiff-railroad did not provide a sufficient basis for federal jurisdiction. Nos. Civ.A.07-2924, Civ.A.06-0062, 2006 WL 2666303, at *7 (E.D.La.14 Sept.2006). The railroad filed an action against multiple defendants for installing railroad crossings at its right-of-way without proper permits. Id. at *2. In response, one of the defendants instituted a Louisiana state-law action, seeking a preliminary injunction preventing the railroad from interfering with the crossings on that defendant's property. Id. Other defendants filed counter-claims against the railroad in federal court. Id. The railroad removed that state-law action to federal court; it was consolidated with the railroad's earlier action against the landowners. Id.
Concerning federal-question jurisdiction, the railroad maintained jurisdiction was proper because its claims would necessarily involve interpretation of the Commerce Clause and the ICCTA. Id. at *7. The railroad based this assertion on the basis that defendants' state-law defenses and counter-claims were preempted under the ICCTA. Id. The court determined, however, that an anticipated federal defense could not form the basis of the railroad's action and that, furthermore, it had not shown it was subject to any conflicting scheme of state regulation. Id. (The district court also held there was no diversity jurisdiction. Id. at *6.)
For obvious reasons, this holding is inapposite to the action at hand. Here, the state-law action was removed on diversity grounds, thereby eliminating any question about federal jurisdiction. PCI Transp., Inc. v. Fort Worth & W. R.R. Co., 418 F.3d 535, 543 (5th Cir.2005) ("Potential defenses, including a federal statute's preemptive effect, do not provide a basis for removal." (emphasis in original)). Moreover, Union Pacific offered evidence at trial that Franks' Louisiana possessory action impermissibly impinged upon the STB's exclusive jurisdiction over rail transportation.
Franks also relies upon the district court's holding being contrary to the decision of the Supreme Court of North Dakota in Home of Economy v. Burlington Northern Santa Fe Railroad, 694 N.W.2d 840 (N.D.2005). There, a landowner sued to force a railroad to restore a crossing after the railroad, without notice to the plaintiff, removed it. Id. at 841. In holding there was no ICCTA preemption, the court found it instructive that none of the provisions in the statute related to railroad crossings. Id. at 844. Moreover, the court found the legislative history of the ICCTA helpful in determining Congress meant only to economically regulate the *449 interstate rail system, and left undisturbed state police powers. Id. In so doing, the court contrasted its holding with our above-discussed decision in Friberg, noting that "some courts have broadly construed Congress's preemption language in the ICCTA and have concluded that language preempted state or local laws". Id.
As stated, we respectfully disagree with the holding in Home of Economy; instead, we believe Island Park to be correctly decided. First, as noted, the statutory language in the ICCTA's preemption provision is unambiguousit provides for the STB's exclusive jurisdiction over transportation by rail carriers. 49 U.S.C. § 10501(b). As also noted, the definition of transportation is extremely broad, covering all "property ... or equipment of any kind related to the movement of passengers or property, or both, by rail". 49 U.S.C. § 10102(9) (emphasis added). Railroad crossings, in the light of factual findings through the bench trial in this action, certainly meet this definition. See Island Park, 2007 WL 1851784, at *12. Therefore, for our determination of ICCTA preemption, we need not stray from the ICCTA's plain statutory language to its legislative history. Friberg, 267 F.3d at 443.
Second, we disagree with the holding in Home of Economy that the ICCTA only applies to the economic regulation of rail transportation. See City of Auburn, 154 F.3d at 1030 (expressly rejecting this view). The scope of the federal preemption of railroad operations is extensive; indeed, "[i]t is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations". Id. (quoting CSX Transp., Inc. v. Ga. Pub. Serv. Comm'n, 944 F.Supp. 1573, 1581 (N.D.Ga.1996)) (internal quotation marks omitted). Nowhere in the statutory text has Congress expressed an intent to limit the regulation to the economic realm. In short, preemption of Franks' state-law action "is consistent with the Act's grant of exclusive jurisdiction over almost all matters of rail regulation to the STB". Id. (internal citation and quotation marks omitted).
The language of the ICCTA's preemption provision, as well as the body of case law on the matter, evinces an intent by Congress to broadly preempt state law as it relates to rail transportation. Here, the district court's conclusion that Franks' state-law action regarding the ownership of railroad crossings concerns transportation by rail carriers is supported by the record; in that regard, its supporting factual findings are not clearly erroneous. We agree, therefore, with the district court's conclusion that Franks' Louisiana possessory action is expressly preempted by the ICCTA.

B.
Preemption deprives Franks of a state-law remedy. It is free, however, to seek relief from the STB. 49 U.S.C. § 10501(b) (exclusive STB jurisdiction over railroad operations and facilities). If it does so, and if it is not satisfied with the result, it may petition our court for review of the STB's order. 28 U.S.C. § 2321(a) (judicial review of STB orders); 28 U.S.C. § 2342(5) (exclusive jurisdiction of courts of appeals to determine validity of final orders of the STB); see, e.g., City of Lincoln, 414 F.3d at 858.

III.
For the foregoing reasons, the judgment is AFFIRMED.