# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2025 ND 147

Northwest Landowners Association, Mike Dresser,
Sandra Short, and the Swenson Living Trust,　　　　Plaintiffs, Appellants, and
　　　　　　　　　　　　　　　　　　　　　　　　　　　Cross-Appellees

and

North Dakota Farm Bureau, Inc.,　　　　Intervenor-Plaintiff, Appellant,
　　　　　　　　　　　　　　　　　　　　　　and Cross-Appellee

　　　v.

State of North Dakota, North Dakota Industrial
Commission, Hon. Douglas Burgum in his
official capacity as Governor of the State of
North Dakota and as the Chairman and a
member of the North Dakota Industrial
Commission, and Hon. Drew Wrigley in his official
capacity as Attorney General of North Dakota and
as a member of the North Dakota Industrial
Commission, and Hon. Doug Goehring in his official
capacity as Agriculture Commissioner of
North Dakota and as a member of the North Dakota
Industrial Commission,　　　　　　　　Defendants and Appellees

　　　and

SCS Carbon Transport, LLC, SCS Permanent Carbon
Storage, LLC, and Summit Carbon Solutions, LLC, Intervenor-Defendants,
　　　　　　　　　　　　　　　　　　　　　Appellees, and Cross-Appellants

　　　and

Minnkota Power Cooperative, Basin Electric Power Cooperative,
and Dakota Gasification Co.,　　　　Intervenor-Defendants and Appellees

### No. 20240298

Appeal from the District Court of Bottineau County, Northeast Judicial District, the Honorable Anthony S. Benson, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Crothers, Justice.

Derrick Braaten, Bismarck, ND, for plaintiffs, appellants, and cross-appellees.

Andrew D. Cook (argued) and Tyler J. Leverington (on brief), West Fargo, ND, for intervenor-plaintiff, appellant, and cross-appellee.

Philip Axt, Solicitor General (argued), Bismarck, ND, and Zachary E. Pelham, Special Assistant Attorney General (appeared), Bismarck, ND, for defendants and appellees.

Lawrence Bender (appeared) and Spencer D. Ptacek (appeared), Bismarck, ND, for intervenor-defendants, appellees, and cross-appellants.

Joshua A. Swanson (appeared), Fargo, ND, for intervenor-defendant and appellee Minnkota Power Cooperative.

Paul J. Forster (argued) and Benjamin J. Sand (on brief), Bismarck, ND, for intervenor-defendants and appellees Basin Electric Power Cooperative and Dakota Gasification Co.

**Crothers, Justice.**

[¶1]   The Northwest Landowners Association, the North Dakota Farm Bureau, and other individual plaintiffs, appeal after the district court granted summary judgment dismissing their claims as either barred by a statute of limitation or as unviable facial challenges. We hold the Plaintiffs lack standing to challenge the constitutionality of N.D.C.C. § 38-22-03(7) and N.D.C.C. ch. 38-25. We also hold the district court erred when it dismissed the remaining claims as time barred. Because the court did not reach the merits of certain claims challenging the constitutionality of N.D.C.C. ch. 38-22, which relates to underground storage of carbon dioxide, we will not decide those issues for the first time on appeal. Dismissal of claims related to pre-condemnation survey provisions in N.D.C.C. §§ 24-05-09 and 32-15-06 on statute of limitation grounds was erroneous, but the result is correct because our precedent forecloses the claims. We affirm in part, reverse in part, and remand the case for further proceedings.

I

[¶2]   The Plaintiffs are individuals, and organizations with members, including some who own pore space in North Dakota. Pore space consists of voids in underground geological formations. "North Dakota law has long established that surface owners have a property interest in pore space." *Northwest Landowners Assoc. v. State*, 2022 ND 150, ¶ 22, 978 N.W.2d 679 (*NWLA I*). One of the Defendants is the North Dakota Industrial Commission, which oversees industry in the State. The NDIC's members are the Governor, the Attorney General, and the Agricultural Commissioner. The Defendants include Summit Carbon Solutions, LLC, Minnkota Power Cooperative, Basin Electric Power Cooperative, and the Dakota Gasification Company. They conduct business in the energy sector, including projects that entail sequestering carbon dioxide and storing it in pore space.

[¶3]   Chapter 38-22, N.D.C.C., was enacted in 2009 and governs "carbon dioxide underground storage." *See* 2009 N.D. Sess. Laws ch. 318, § 1. Chapter 38-25,

N.D.C.C., was enacted in 2021 and governs "underground storage of oil or gas." *See* 2021 N.D. Sess. Laws ch. 277, § 3. Each law has a provision authorizing the NDIC to amalgamate pore space interests upon application for an underground storage permit. *See* N.D.C.C. §§ 38-22-10, 38-25-08. Both require the NDIC to find that all nonconsenting pore space owners "are or will be equitably compensated" before issuing a permit. *See* N.D.C.C. §§ 38-22-08(14), 38-25-05(18). Both also contain provisions authorizing the NDIC to grant exceptions to the statutory requirements for obtaining a permit. *See* N.D.C.C. §§ 38-22-03(7), 38-25-02(8). Other laws challenged in this appeal authorize surveys of private land prior to condemnation. They are N.D.C.C. § 32-15-06, which was enacted in 1985 and allows entry for surveys in eminent domain proceedings, and N.D.C.C. § 24-05-09, which was enacted in 1935 and allows entry for surveys prior to right of way condemnations by counties. *See* 1935 N.D. Sess. Laws ch. 121, § 1 and 1985 N.D. Sess. Laws ch. 82, § 77.

[¶4] The NDIC has issued orders granting permits for underground carbon dioxide storage projects located in Stark, McLean, Mercer, and Oliver counties. These projects involve capturing carbon dioxide from energy production facilities, compressing it into a liquid form, transporting it to the storage facility, and injecting it into pore space for permanent storage in below-ground geological formations. The geological formations do not correspond neatly to surface interest boundaries, and the carbon dioxide migrates within the formation. Oil and natural gas also can be stored in underground geological formations until they are withdrawn and sold. According to an affidavit filed by the Director of the North Dakota Department of Mineral Resources, "no oil or gas underground storage amalgamation orders have been issued by the Industrial Commission" and neither have "any such orders been formally proposed to the Industrial Commission."

[¶5] The Plaintiffs filed this lawsuit against the State in 2023. The Plaintiffs seek declarations that the amalgamation and pre-condemnation survey laws are unconstitutional. Taken together, their complaints advance three claims: (1) on their face, the amalgamation and survey laws violate takings clauses in the state and federal constitutions because they authorize a physical invasion of property without prior just compensation decided by a jury; (2) the laws violate

2

substantive and procedural due process for the same reason; and (3) the provision allowing the NDIC to make exceptions to the statutory requirements for carbon dioxide storage amalgamation constitutes an impermissible delegation of power from the Legislative Branch to the Executive Branch. The Plaintiffs sought an injunction precluding enforcement of the laws. The private-sector defendants were granted permission to intervene.

[¶6] The parties filed cross-motions for summary judgment. The district court ruled in favor of the Defendants. The court decided a six-year limitation period applied to the claims. The court reasoned "the date from which a statute of limitations should be analyzed is the date the statute was enacted" because the claims constitute facial challenges to takings laws. The court ruled the claims challenging the carbon dioxide storage law and the pre-condemnation survey laws, all enacted more than six years ago, were not brought within the limitation period. The court ruled the claim challenging the oil and gas storage law, enacted in 2021, was not time barred. The court nonetheless decided the claim was not amenable to the Plaintiffs' facial challenge because it "depends on future action and also involves consideration of various factual circumstances." The Plaintiffs appeal.

II

[¶7] We first address the Plaintiffs' challenges to the underground storage provisions in N.D.C.C. ch. 38-22 and 38-25. The Defendants have raised threshold issues related to whether the Plaintiffs have standing to challenge those laws, whether the Plaintiffs have failed to exhaust administrative remedies, and whether our jurisdiction is preempted by federal law.

A

[¶8] The State argues the appeal should be dismissed because the Plaintiffs lack standing. As explained in detail below, we agree the Plaintiffs lack standing to bring their non-delegation challenge to N.D.C.C. § 38-22-03(7) and to bring their challenge to the N.D.C.C. ch. 38-25 oil and gas amalgamation provisions. We disagree none of the Plaintiffs have standing to challenge the constitutionality of the N.D.C.C. ch. 38-22 carbon dioxide storage amalgamation provisions.

3

[¶9]   "Standing is the concept used to determine if a party is sufficiently affected so as to insure that a justiciable controversy is presented to the court." *Kjolsrud v. MKB Mgmt. Corp.*, 2003 ND 144, ¶ 13, 669 N.W.2d 82 (cleaned up) (quoting *Rebel v. Nodak Mut. Ins. Co.*, 1998 ND 194, ¶ 8, 585 N.W.2d 811). "A court may decide the merits of a dispute only if the parties demonstrate they have standing to litigate the issues." *Whitecalfe v. N.D. Dep't of Transp.*, 2007 ND 32, ¶ 15, 727 N.W.2d 779. "To have standing plaintiffs must show they have suffered some threatened or actual injury resulting from the putatively illegal action, and the harm must not be a generalized grievance shared by all or a large class." *First Int'l Bank & Tr. v. Peterson*, 2011 ND 87, ¶ 9, 797 N.W.2d 316 (cleaned up) (quoting *Nodak Mut. Ins. Co. v. Ward Cnty. Farm Bureau*, 2004 ND 60, ¶ 11, 676 N.W.2d 752). "[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek . . . ." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). "An association may have 'associational standing' to bring a suit on behalf of its members, even if the association has not suffered an injury to itself, but generally only when the association is seeking declaratory, injunctive, or other prospective relief." *Peterson*, ¶ 11. Whether standing exists is a question of law fully reviewable on appeal. *Flatt ex rel. Flatt v. Kantak*, 2004 ND 173, ¶ 38, 687 N.W.2d 208.

1

[¶10] The Plaintiffs have not demonstrated standing to bring their non-delegation challenge to N.D.C.C. § 38-22-03(7). The Plaintiffs claim the legislature engaged in an improper delegation of power by giving the NDIC authority to "grant, for good cause, exceptions to [the carbon dioxide storage amalgamation] requirements and implementing rules." N.D.C.C. § 38-22-03(7). However, the Plaintiffs have not alleged facts indicating the NDIC granted an exception or otherwise injured them in the course of infringing upon the legislature's authority. According to an affidavit from the Director of the Department of Mineral Resources, no exception has ever been requested or granted under this provision. Absent a showing of any direct actual or threatened injury related to N.D.C.C. § 38-22-03(7), Plaintiffs lack standing to bring their non-delegation claim. *See Tooz v. State*, 38 N.W.2d 285, 290 (N.D. 1949) (quoting *Olson v. Ross*, 167 N.W.385, 386 (N.D. 1918) ("A party who assails the

4

validity of a statute on constitutional grounds must show that he is prejudiced by the alleged unconstitutional provision, and that a decision on the constitutional question is necessary in order to protect him in the enjoyment of the rights guaranteed to him by the Constitution.")).

2

[¶11] The Plaintiffs also have not demonstrated standing to challenge the constitutionality of the N.D.C.C. ch. 38-25 oil and gas storage amalgamation provisions. None of the Plaintiffs allege they or their members own interests in lands that are subject to an oil and gas storage amalgamation application or order. According to the Department of Mineral Resources Director's affidavit, "no oil or gas underground storage amalgamation orders have been issued by the Industrial Commission under N.D.C.C. § 38-25-08, nor have any such orders been formally proposed to the Industrial Commission." Absent a showing of any direct actual or threatened injury related to N.D.C.C. ch. 38-25, the Plaintiffs lack standing to challenge the constitutionality of the law. *See King v. Baker*, 288 N.W. 565, 566 (N.D. 1939) ("In order to maintain an action to enjoin a state officer from enforcing a statute upon the ground that the statute is unconstitutional the plaintiff must show that he has been directly injured, or is immediately threatened with direct injury, by such enforcement.")

3

[¶12] The Plaintiffs have demonstrated standing to challenge the N.D.C.C. ch. 38-22 carbon dioxide amalgamation provisions. The State's expert witness, Dr. John Harju, reported that North Dakota "has now approved six Class VI storage facility permits, which will be capable of storing CO2 produced by ethanol facilities, coal power plants, and a coal gasification facility." NWLA alleged it has at least one member who owns pore space that has been amalgamated for an underground carbon dioxide storage project. The NDFB similarly asserts its members own pore space interests where carbon dioxide sequestration projects "have been permitted, and/or have been approved by the Commission" and "for which NDFB members have refused to consent." The Department of Mineral Resources Director's affidavit identifies various individual interests owned by NWLA and NDFB members, and the affidavit acknowledges those individuals

5

may be affected by proposed or approved carbon dioxide amalgamation orders. Some of the Plaintiffs have demonstrated an actual or threatened injury by virtue of NDIC orders authorizing amalgamation of pore space for carbon dioxide storage projects under N.D.C.C. ch. 38-22. *See Barrett v. State*, 547 P.3d 630, 641 (Mont. 2024) ("In a multi-plaintiff case such as here, the standing of any one plaintiff is sufficient for a claim to proceed and, upon finding that one plaintiff has standing, the standing of the other parties does not merit inquiry.") (cleaned up). Consequently, standing exists in this case to challenge the law's constitutionality

B

[¶13] Summit Carbon Solutions argues the case should be dismissed for lack of jurisdiction because it presents a federal question that must be decided by a federal court. Summit Carbon Solutions asserts federal courts have exclusive jurisdiction over these claims because N.D.C.C. ch. 38-22 was incorporated by reference into an Environmental Protection Agency program authorizing North Dakota regulators to oversee underground injection activities in the state.

[¶14] While careful to frame their argument as one about "jurisdiction," Summit Carbon Solution's claim is that the North Dakota courts are preempted under federal law from acting on the questions presented. "Under the Supremacy Clause, U.S. Const. art. VI, the laws of the United States are the 'supreme law of the land,' and state law that conflicts with federal law is without effect." *State ex rel. Stenehjem v. FreeEats.com, Inc.*, 2006 ND 84, ¶ 19, 712 N.W.2d 828 (quoting *Home of Economy v. Burlington N. Santa Fe R.R.*, 2005 ND 74, ¶ 5, 694 N.W.2d 840). State and federal cases establish "three forms of federal preemption: express preemption, field preemption, and conflict preemption." *FreeEats.com*, ¶ 23. Here, Summit Carbon Solutions argues federal law expressly preempts state court review of the Plaintiffs' claims.

[¶15] "Because of the 'interstitial nature of Federal law,' preemption of state law is not favored, and the framework for analyzing a preemption claim under the Supremacy Clause begins with the basic assumption that Congress did not intend to displace state law." *FreeEats.com*, 2006 ND 84, ¶ 20 (quoting *Billey v.*

*N.D. Stockmen's Ass'n*, 1998 ND 120, ¶ 28, 579 N.W.2d 171). "The United States Supreme Court has expressly noted that, because 'the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt' state law." *FreeEats.com*, ¶ 20 (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005)).

[¶16] Summit Carbon Solutions argues North Dakota courts lack jurisdiction over this declaratory judgment action under a provision in the Safe Drinking Water Act, codified at 42 U.S.C. § 300j-7, which states:

> A petition for review of—
>
> (1) actions pertaining to the establishment of national primary drinking water regulations (including maximum contaminant level goals) may be filed only in the United States Court of Appeals for the District of Columbia circuit; and
>
> (2) any other final action of the Administrator under this Act may be filed in the circuit in which the petitioner resides or transacts business which is directly affected by the action.

Summit Carbon Solutions relies on *California Dump Truck Owners Association v. Nichols*, 784 F.3d 500 (9th Cir. 2015), where a federal appellate court did a preemption analysis and upheld a federal district court's decision that it lacked jurisdiction to review a state pollution regulation that was adopted by an EPA-approved program. *See id.* at 504 (stating "invalidation of an EPA-approved SIP may only occur in the federal appellate courts on direct appeal from the Administrator's decision"). Summit Carbon Solutions claims that, under this federal law, we lack jurisdiction to decide the constitutionality of N.D.C.C. ch. 38-22 because it was incorporated by reference into an EPA program.

[¶17] Summit Carbon Solutions has not explained how our decision on the constitutionality of N.D.C.C. ch. 38-22 would conflict with the EPA's ability to enforce its program. Unlike the federal courts in *Nichols*, we have no authority to enjoin a federal agency. We also reject Summit Carbon Solution's expansive preemption argument because its adoption would mean the Eighth Circuit Court of Appeals has exclusive jurisdiction over vast swaths of our state laws and

7

regulations. Along with the law at issue in this case, the EPA has incorporated by reference approximately 40 sections of the North Dakota Century Code and 100 sections of the North Dakota Administrative Code. *See* 40 C.F.R. § 147.1751. We do not read the case relied on by Summit Carbon Solutions to sweep so broadly.

[¶18] The plaintiff's goal in *Nichols* was to nullify California's state implementation plan (SIP). 784 F.3d at 510 ("In sum, the practical objective of the Truck Association's preemption suit is to nullify the SIP and challenge the EPA's legal determination regarding its validity."). Here, we are not asked to review an "action of the [EPA] Administrator under [the Safe Water Drinking Act]." 42 U.S.C. § 300j-7(a)(2). We also are not asked to nullify EPA's action in reference to North Dakota law. The Plaintiffs here instead seek a declaration that a statute passed by the North Dakota Legislature is unconstitutional. This controversy is well within our jurisdiction. *See* N.D. Const. art VI, § 1; *see also N.D. Legis. Assembly v. Burgum*, 2018 ND 189, ¶ 42, 916 N.W.2d 83 (stating "we are charged with interpreting the North Dakota Constitution and its distinct provisions").

C

[¶19] Summit Carbon Solutions argues this case should be dismissed because the Plaintiffs have failed to exhaust administrative remedies. It asserts the Plaintiffs could petition the NDIC to reverse its amalgamation orders and thus adequate administrative relief exists precluding judicial action.

[¶20] Exhaustion of administrative remedies generally is a prerequisite to seeking declaratory relief in the courts. *Cont'l Res., Inc. v. N.D. Dep't of Envtl. Quality*, 2019 ND 280, ¶ 10, 935 N.W.2d 780. The doctrine is rooted in the separation of governmental powers. *Zerr v. N.D. Workforce Safety & Ins.*, 2017 ND 175, ¶ 12, 898 N.W.2d 700. The doctrine preserves the authority of administrative agencies and allows them to apply their expertise. *Garaas v. Petro-Hunt, L.L.C.*, 2024 ND 34, ¶ 10, 3 N.W.3d 156. It provides "an efficient method for dispute resolution by giving the agency a chance to correct its mistakes before being sued." *Olympic Fin. Grp., Inc. v. N.D. Dept. of Fin. Insts.*, 2023 ND 38, ¶ 24, 987 N.W.2d 329. "If the agency has an opportunity to correct its own errors, a judicial

controversy may be mooted or, at a minimum, piecemeal appeals may be avoided." *Id.* (quoting *Medcenter One, Inc. v. N.D. St. Bd. of Pharmacy*, 1997 ND 54, ¶ 11, 561 N.W.2d 634).

[¶21] The Plaintiffs in this case are not alleging the NDIC failed to comply with the law. They are alleging the law, on its face, is unconstitutional. There is no claimed error the NDIC could correct. Defendants nonetheless assert exhaustion is required because the NDIC has expertise in the field of correlative rights. Although this case may implicate that doctrine generally, it does not require technical analysis of underground geological formations or how carbon dioxide may migrate within a certain formation. The case instead requires a decision as to whether N.D.C.C. ch. 38-22 is consistent with constitutional takings and due process clauses, and the relief sought is a declaration that the statute is unconstitutional on its face. The NDIC lacks authority to do the former or provide the latter. The case fits within the "well-recognized" exception that applies when "a legal question simply involves statutory interpretation and does not need the exercise of an agency's expertise in making factual decisions." *Medcenter One*, 1997 ND 54, ¶ 12. The doctrine of exhaustion of administrative remedies does not apply.

III

[¶22] Having decided the Plaintiffs have a proper challenge to N.D.C.C. ch. 38-22, we turn to questions whether relief is available for the claims challenging that law. The Defendants assert no relief is available due to the facial nature of the Plaintiffs' claims and because of a lapsed limitation period.

A

[¶23] The Defendants argue that, absent an assertion N.D.C.C. ch. 38-22 unconstitutionally took property upon its enactment, the Plaintiffs' facial challenge is not viable.

[¶24] There is a difference between a claim asserting a law is facially unconstitutional and a claim asserting an unconstitutional facial taking occurred. An ordinary facial challenge requires a plaintiff to prove the legislature

9

"exceeded a constitutional limitation" when it enacted a law, and consequently the law "on its face violates the constitution." *Sorum v. State*, 2020 ND 175, ¶ 21, 947 N.W.2d 382. A facial takings claim, on the other hand, is a specific type of facial challenge that asserts "the mere enactment of a statute constitutes a taking." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 494 (1987); *see also* Timothy Sandefur, *The Timing of Facial Challenges*, 43 Akron L. Rev. 51, 62 (2010) ("A facial taking, on the other hand, occurs when the enactment of a challenged law inherently constitutes a taking of property . . . .").

[¶25] The law challenged in *NWLA I* is an example of a facial takings claim. Enactment of the law itself amounted to a taking. By its language, the law "eliminat[ed]" a property right. *NWLA I*, 2022 ND 150, ¶ 27. The law specifically removed "one of the most treasured property rights because it *takes away* landowners' right to exclude oil and gas operators from trespassing and disposing waste into their pore space." *Id.* ¶ 26 (emphasis added). Basin Electric relies on *NWLA I* for the proposition that a facial challenge in the takings context is not viable unless it asserts the law effectuates a taking by its "mere enactment" because a facial challenge does not require consideration of circumstances outside the text of the law. Contrary to Basin Electric's argument, we did not embrace such a rule. The only takings claim before us *was* a facial takings claim. We made no statements about the viability of other types of facial challenges—such as one claiming the law authorizes unconstitutional takings procedures.

[¶26] The Plaintiffs here do not claim their property was taken when N.D.C.C. ch. 38-22 was enacted. They instead assert unconstitutional takings occurred when the NDIC granted underground carbon dioxide storage permits under the authority of N.D.C.C. ch. 38-22. They claim the law is facially invalid because it authorizes (not effectuates) takings of private property via unconstitutional methods. Read in whole, the thrust of the claims articulated in their complaints is that the law does not comply with due process or the constitutional requirement that just payment, as determined by a jury, be made before a taking occurs. *See* N.D. Const. art. I, §§ 12, 16. Nothing in our law or jurisprudence suggests those facial challenges are not viable.

[¶27] The Plaintiffs argue the district court erred when it dismissed their claims as time barred by a six-year statute of limitation. The Plaintiffs contend the court incorrectly decided their claims accrued when the carbon dioxide amalgamation law was enacted. They assert the claims actually accrued when the NDIC issued orders authorizing the carbon dioxide storage projects.

[¶28] "A statute of limitation bars a right of action unless it is filed within a specified period of time after an injury occurs." *Hoffner v. Johnson*, 2003 ND 79, ¶ 9, 660 N.W.2d 909 (quoting *Hanson v. Williams Cnty.*, 389 N.W.2d 319, 321 (N.D. 1986)).

> Statutes of limitations are a legal bar to a cause of action and begin to run when the underlying cause of action accrues. *Abel v. Allen*, 2002 ND 147, ¶ 10, 651 N.W.2d 635. The determination of when a plaintiff's cause of action has accrued is generally a question of fact, but if there is no dispute about the relevant facts, the determination is for the court. *Id.* at ¶ 11. A cause of action accrues when the right to commence the action comes into existence and can be brought in a court of law without being dismissed for failure to state a claim. *Id.* at ¶ 12. We have recognized statutes of limitation ordinarily began to run from the commission of the wrongful act giving rise to the cause of action, *see BASF Corp. v. Symington*, 512 N.W.2d 692, 695 (N.D. 1994), and "an injury usually arises contemporaneously with the wrongful act causing the injury." *Huber v. Oliver County*, 529 N.W.2d 179, 182 (N.D. 1995) (quoting *Erickson v. Scotsman, Inc.*, 456 N.W.2d 535, 537 (N.D. 1990)).

*Dunford v. Tryhus*, 2009 ND 212, ¶ 6, 776 N.W.2d 539 (cleaned up) (quoting *Tarnavsky v. McKenzie Cnty. Grazing Ass'n*, 2003 ND 117, ¶ 9, 665 N.W.2d 18). "The purpose of a statute of limitations is to prevent plaintiffs from sleeping on their legal rights and bringing stale claims to the detriment of defendants." *Hager v. City of Devils Lake*, 2009 ND 180, ¶ 38, 773 N.W.2d 420. In the context of an inverse condemnation case, the N.D.C.C. § 28-01-16(1) six-year limitation period for actions asserting liability applies to claims brought under N.D. Const. art. I, § 16. *Id.* ¶ 34. We explained such claims are "premised upon the governmental

entity's implied promise to compensate the owner of property taken or damaged for public use." *Id.*

[¶29] The Defendants assert the limitation period has lapsed. They argue the claims accrued when the laws were enacted because they are facial challenges to takings laws. However, whether a claim is a facial or as-applied challenge is "not of great import" when deciding whether it has accrued for purposes of a statute of limitation. *Lindner v. Kindig*, 826 N.W.2d 868, 873 (Neb. 2013). "[T]he accrual date of a facial or as-applied challenge is identical to the accrual date of other substantive claims—the date upon which the plaintiff's injury occurred and the cause of action became complete." *Gillmor v. Summit Cnty.*, 246 P.3d 102, 109 (Utah 2010). "[A] case alleging facial unconstitutionality is ripe not simply when the law is passed but, just like an as-applied challenge, when the government acts pursuant to that law and adversely affects the plaintiff's rights." *Lindner*, at 873 (quoting Sandefur, *supra*, at 61).

[¶30] The Defendants, like the district court, rely on cases where regulatory takings claims were barred by statutes of limitations. *See, e.g., Asociacion de Suscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jimenez*, 659 F.3d 42, 49 (1st Cir. 2011) (explaining the appropriate test in a facial takings challenge is whether passage of the law denies an owner economically viable use of property); *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir. 1993) (a regulatory takings case explaining "the differences between a statute that effects a taking and a statute that inflicts some other kind of harm"). Regulatory takings are different than physical takings. *Wilkinson v. Bd. of Univ. and Sch. Lands*, 2022 ND 183, ¶ 25, 981 N.W.2d 853. In a regulatory taking, the law itself deprives an owner of economically beneficial use of his or her property. *Id.* This is unlike a physical taking, where an owner actually suffers a permanent physical invasion of his or her property. *Id.* For purposes of this appeal, the important distinction between physical and regulatory takings claims is the accrual date. "In a regulatory taking, it is passage of the ordinance that injures a property's value or usefulness. But a physical taking causes injury when the property itself is taken." *Lowenberg v. City of Dallas*, 168 S.W.3d 800, 802 (Tex. 2005).

[¶31] The Plaintiffs have not brought a regulatory takings claim. They do not claim the laws themselves have decreased their properties' value or usefulness. As we have explained, they assert the laws, as implemented by NDIC orders approving permits, authorize the injection of carbon dioxide into their pore space without prior payment of just compensation. In other words, the Plaintiffs claim they have or will suffer an unconstitutional physical invasion of their property. Their claims therefore did not accrue when the laws were enacted. They suffered no actual or threatened physical invasion of their property at that time. Their claims instead accrued when the NDIC acted under the authority of the law. The district court erred when it dismissed the Plaintiffs' challenge to N.D.C.C. ch. 38-22 as barred by the N.D.C.C. § 28-01-16(1) six-year limitation period.

IV

[¶32] Each side contends a decision on the constitutionality of N.D.C.C. ch. 38-22 will have profound consequences for North Dakotans. The Plaintiffs assert the case implicates the very nature of property rights in the state, and the Defendants claim a decision could dramatically affect the energy industry.

[¶33] When exercising our appellate jurisdiction, we refrain from deciding issues not addressed by the district court because doing so "gives that court a meaningful opportunity to make a correct decision, contributes valuable input to the process, and develops the record for effective review of the decision." *Mead v. Hatzenbeller*, 2023 ND 248, ¶ 21, 999 N.W.2d 618 (quoting *Albertson v. Albertson*, 2023 ND 225, ¶ 8, 998 N.W.2d 811). We also exercise constitutional avoidance when possible, *Overbo v. Overbo*, 2024 ND 233, ¶ 7, 14 N.W.3d 898, and we "will not consider or decide questions, particularly constitutional questions, that are not necessary to the determination of an appeal." *Frokjer v. N.D. Bd. of Dental Examiners*, 2009 ND 79, ¶ 20, 764 N.W.2d 657.

[¶34] The district court did not reach the merits of the claims challenging N.D.C.C. ch. 38-22 because it decided they were barred by a statute of limitations. Because the court erred when it dismissed the Plaintiffs' challenge on these grounds, we decline to decide for the first time on appeal the substantial constitutional issues the case presents. *See Bolinske v. Sandstrom*, 2022 ND 148,

13

¶ 23, 978 N.W.2d 72 (declining to address the merits of a claim after deciding it was improperly dismissed due to a lapsed limitation period). We instruct the district court to consider on remand the merits of the claims challenging the amalgamation provisions in N.D.C.C. ch. 38-22.

V

[¶35] The NWLA and Sandra Short challenge the constitutionality of N.D.C.C. §§ 24-05-09 and 32-15-06. Each law authorizes entry on private property for the purpose of conducting pre-condemnation surveys and examinations. The NWLA argues the laws are unconstitutional on their face because they authorize a physical invasion of private property without requiring a prior payment of just compensation as determined by a jury. The district court did not address the merits of these claims because it decided they were time barred. For the reasons we explained in Part III-B, these physical takings claims did not accrue when the laws were enacted, and the court erred when it decided otherwise.

[¶36] Dismissal of these claims was nonetheless the correct result. While these proceedings were pending, we decided *SCS Carbon Transp. LLC v. Malloy*, 2024 ND 109, 7 N.W.3d 268. There landowners similarly claimed N.D.C.C. § 32-15-06 was facially invalid because it permitted unconstitutional takings of private property. *Id.* ¶ 18. We rejected their claim, explaining: "Because survey access is a longstanding background restriction, Landowners cannot demonstrate that they have a constitutionally protected interest in excluding limited, innocuous intrusion by pre-condemnation surveyors." *Id.* ¶ 28.

[¶37] The NWLA's and Short's facial challenge to the pre-condemnation survey laws is foreclosed by our decision in *SCS Carbon Transport v. Malloy*. The district court correctly granted summary judgment on these claims to the Defendants—albeit for the wrong reason. *See State v. Lafromboise*, 2021 ND 80, ¶ 20, 959 N.W.2d 596 ("This Court long has embraced the rule that the district court's result will be affirmed if it is right for the wrong reason.").

14

# VI

[¶38] The Plaintiffs lack standing to challenge the constitutionality of N.D.C.C. § 38-22-03(7) and N.D.C.C. ch. 38-25. The district court erred when it dismissed the remaining claims as time barred. Because the court erroneously decided the claims challenging the carbon dioxide storage provisions in N.D.C.C. ch. 38-22 are time barred, we refrain from addressing their merits for the first time on appeal. Dismissal of the NWLA's and Short's claims related to the pre-condemnation survey provisions in N.D.C.C. §§ 24-05-09 and 32-15-06 on statute of limitation grounds was erroneous, but the result is correct because our precedent forecloses the claims. The summary judgment is affirmed in part, reversed in part, and the case is remanded for further proceedings.

[¶39] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr

15